170 N.J. Super. 128 (1979)
405 A.2d 866
MIDLANTIC NATIONAL BANK (FORMERLY NATIONAL NEWARK AND ESSEX BANK), A NATIONAL BANKING ASSOCIATION, PLAINTIFF,
v.
FRANK G. THOMPSON FOUNDATION, A CORPORATION NOT FOR PROFIT, CHARLES D. GEER, AND WILLIAM F. HYLAND, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
June 18, 1979.
*130 Mr. Harry Schaffer for plaintiff.
Ms. Rebecca Fields, Deputy Attorney General, for defendants (Mr. John J. Degnan, Attorney General, attorney).
DWYER, J.S.C.
The successor trustees of the Frank G. Thompson Foundation, a nonprofit corporation organized under the laws of New Jersey, (Foundation) petitioned the court for advice as to whether the Foundation could: (1) award scholarships to young women as well as young men, and (2) enter into a contract with the Midlantic National Bank (bank) or (executor) for custodial and investment advice concerning the securities it was about to receive from the executor. The petition was filed in the same action as the bank's final accounting as executor. The Attorney General was made a party defendant pursuant to his responsibility *131 to oversee the public interest in the administration of charities. Passaic Nat'l Bank & Tr. Co. v. East Ridgelawn Cemetery, 137 N.J. Eq. 603, 607-608 (E. & A. 1946); 6 N.J. Practice § 1121.
The Attorney General did not oppose the first request. The court approved it in a letter opinion. He opposed the latter. A hearing was held and briefs submitted.
The Foundation was created pursuant to the provisions of the will of Frank G. Thompson, who died on June 13, 1960. A predecessor of the bank was the named executor and the bank has finished the administration as the executor. Paragraph FIFTEENTH of the will provided that the residue was to be held in trust, the income was to be paid to his widow and mother-in-law, and upon the death of the last to survive, certain bequests were to be paid and the remainder to be paid to the Foundation.
Paragraph FIFTEENTH stated the general objects of the Foundation to be to use the income for college scholarships for needy young men, preferably from Livingston Township, but left to the executor the duty to state the details of the certificate of incorporation and appoint five persons to the initial board of trustees, one of whom was to be the Superintendent of Schools of Livingston. The certificate of incorporation gives Foundation the power to employ investment advisers. The trustees were to appoint their own successors. Before the life income beneficiaries died, two of the five original trustees died, one had retired as Superintendent of Schools and moved to Florida, one had been appointed to the judiciary and one indicated that he no longer wished to serve. All submitted resignations. The executor was advised it had no power to appoint successor trustees.
Upon application of the executor and notice to the Attorney General the court appointed the present Superintendent of Schools of Livingston, the Town Administrator, an attorney-at-law, a business man with considerable experience in civic, charitable and athletic work, including that for teenagers, and a *132 vice-president of the Educational Testing Service, Princeton, New Jersey. All have agreed to serve without compensation.
Pending resolution of this matter they have worked out of the offices of the local officials. They have established criteria for awarding scholarships. They have distributed announcements and reviewed applications. This is a time-consuming process. The executor has custody of the securities awaiting this decision.
At the time of the hearing there was $11,400 of accumulated income and about $100,000 of corpus. A representative of the bank testified that for keeping the securities, collecting and disbursing the income, assisting with the tax return, and giving investment advice, the charge would be $300 minimum plus an amount equal to 1/3 of 1% of the market value of the securities held, or an estimated $333 on $100,000. The total would be $633 less a 20% charity discount or $506.40.
The Attorney General objects on two grounds. First, the bank intends to keep the securities registered in the name of its nominee and hence the Foundation's securities would not be "earmarked." See Bogart, Trusts and Trustees (2 ed.), § 596. He contends that N.J.S.A. 3A:15-31 cited by petitioners is not applicable. Second, the fee is higher than 6% of the income and hence is in excess of what the Legislature has authorized, 6% on $7,000 estimated annual income, or $420. Cf. Donaldson v. Madison, 88 N.J. Super. 574 (Ch.Div. 1965). He further urges that one of the duties of trustees is to invest the corpus, to produce an income, and to deduct their expenses against commissions. The size of the corpus is such that outside help is not needed.
The court agrees that N.J.S.A. 3A:15-30 et seq. does not apply on the facts of this case. The bank is not a "clearing corporation" as defined in N.J.S.A. 12A:8-102 for present purposes. N.J.S.A. 3A:15-30(d); hence N.J.S.A. 3A:15-31 does not apply.
The Foundation is authorized to hold securities in trust for charitable or benevolent purposes. N.J.S.A. 15:14-6; Smith v. *133 Pond, 92 N.J. Eq. 211 (E. & A. 1920), rev'g 90 N.J. Eq. 445 (Ch. 1919). The transfer of securities to the Foundation will be to it as a charitable corporation and not to the individual members of its board of directors as trustees.
In Brigham v. Peter Bent Brigham Hospital, 134 F. 513 (1 Cir.1904), the court said:
We should observe that the [charitable] corporation contemplated by the will was not to hold in trust, in the technical sense of the word, the property which it might receive. It was to hold it for its own purposes in the usual way in which charitable institutions hold their assets. Such a holding is sometimes called a quasi trust, and an institution like the one in question is subject to visitation by the state; but the holding does not constitute a true trust. On the transfer of the property devised * * * to a corporation as was anticipated, all technical trusts ceased. [at 517]
See also, Attorney General v. Olson, 346 Mass. 190, 191 N.E.2d 132 (Sup.Jud.Ct. 1963); Restatement, Trusts 2d, § 348(f); Scott, Trusts (2 ed.), §§ 348.1, 385A.
The powers of the persons who act as directors of a charitable nonprofit corporation, whether called directors or trustees, are prescribed in the statute of incorporation, in the instrument creating the corporation, and those implied powers which are necessary and proper to carry out the purposes for which the charity was created and which are not in conflict with expressions in the instrument creating the charity. Restatement, Trusts 2d, §§ 379, comment (b), 380. In respect to investments, the individuals comprising the board must participate in all decisions but may act by a majority decision and may appoint a committee to supervise the investments subject to the general approval of the board. Restatement, Trusts 2d, § 379, comment (b).
In respect to the requirement that the assets of a trust be earmarked, within the literal and technical sense of the word, the Legislature has authorized a departure from the common law in N.J.S.A. 3A:15-7. That statute authorizes state and national banks, when acting as a sole fiduciary and as a cofiduciary, when the other fiduciary consents, to place trust securities in the name of a nominee when the conditions therein are met. *134 In F.O. 1960, No. 28, the Attorney General has stated that the aforesaid statute is authority upon which the State Treasurer may contract with banks to hold stocks for pension funds of the State in the names of nominees where the respective boards of trustees of such pension funds consent.
Assuming, but not deciding, that the members of the board of the Foundation are under a duty to earmark or segregate the securities held, the court concludes that they will not violate that duty if, in the proposed contract with the bank, it agrees to the conditions of N.J.S.A. 3A:15-7, i.e.:
(1) the records of Bank will show the ownership of the securities held for Foundation;
(2) the securities held in the nominee's name for the bank in its fiduciary capacity are segregated from all other assets of Bank;
(3) the nominee shall not have access to the securities;
(4) the bank agrees to be liable for any loss occasioned by the acts of the nominee with respect to the securities so registered.
Under the proposed contract, the bank, as custodian for the securities of the Foundation, will be acting as a fiduciary, for it will hold the securities for another. There is no prohibition in the will, or in the certificate of incorporation, against the holding of securities in the name of a nominee.
In respect to the second objection that the proposed fees are excessive, the Attorney General points out that in Donaldson v. Madison, supra, the court held that the trustees of a charitable trust were entitled only to commissions on income under N.J.S.A. 3A:10-2 and questioned whether commissions on corpus could be allowed to such trustees. He urges that the proposed arrangement allows an amount in excess of 6% on income and uses a factor based on corpus; hence the fee is excessive.
In Donaldson v. Madison, the individual petitioners were trustees under an inter vivos trust instrument whose duties were to generate an income to be used for the maintenance of a public building, the ordinary maintenance expense of which was to be *135 borne by Madison Borough. There was no charitable corporation involved.
The leading writers on trusts, 4 Scott, Trusts (3 ed.), § 390 (hereinafter Scott), and Bogert, Trust and Trustees (2 ed.), § 396, (hereinafter Bogert), state that trustees of a charitable trust are entitled to at least commissions on the income of charitable trusts. The cases and statutes cited in the respective footnotes for that statement support it, but all involve applications by persons who are acting as trustees of trusts the income of which is to be paid out for charitable purposes. None involves an application by persons who served as trustees of a college, hospital or other charitable corporation, who had the operating responsibility for a charity with an endowment fund upon which commissions were sought.
One reason for the lack of authority on the question of whether the persons in charge of such corporations are entitled to commissions is that such persons in charge of directing the funds held by charitable corporations are not under a duty to account periodically and, presumably, the trust will go on in perpetuity and hence never be settled. Under N.J.S.A. 3A:10-4 commissions on nontestamentary trusts are only allowed on settlement of the account; hence, a trust that is to be perpetual would never be settled. At common law and today, the Attorney General has visitorial power over such corporations and can compel an accounting. Bogert, §§ 396, 411; 4 Scott, § 391. The states and the Federal Government under the income tax law have enacted statutes that require annual reporting by such corporations. See Bogert, § 411.
In the present case, the petitioners have the responsibility of reviewing the applications and awarding the scholarships as well as handling the investments. They, like most individuals serving in such capacities, do not seek compensation.
The distinction between a trust for a charitable purpose and a charitable corporation is becoming the subject of increasing attention by the courts. See Stern v. Lucy Webb Hayes Nat'l *136 Training School, etc., 381 F. Supp. 1003 (D.D.C. 1974); Bogert, § 396. In 6 N.J. Practice, § 517 (3 ed.), the author states that where funds are left to a charitable corporation, "by the better view, no trust in the strict sense is created * * *," and cites Scott and Bogert for support. Those authorities, in turn, cite Brigham v. Peter Bent Brigham Hospital supra, and similar cases.
In Stern v. Lucy Webb Hayes Nat'l Training School, etc., supra, the court had to decide whether the criteria for judging the performance of directors of a charitable corporation should be that of directors of a corporation under corporate law or that of trustees under trust law. The court held the standard should be that of directors under corporate law. That court pointed out that the directors of the charitable corporation involved therein had the responsibility of running the hospital as well as managing its assets; hence their tasks were more like those of directors.
Traditionally, the compensation of directors of both profit-making and nonprofit corporations are not based on the value of the assets managed and the income produced, as is the compensation of trustees. Directors are expected to delegate responsibility, set over-all policy for others to follow, and supervise those employed to do the work of a corporation. In contrast, traditionally, trustees are not supposed to delegate; they are expected to keep their own accounts and are personally liable for their actions. They are also personally compensated in terms of the assets managed and the income produced.
In Bogert, § 396 at 283, the author states that one of the purposes of the Uniform Management of Institutional Funds Act is to enable the governing body of a charitable corporation to avoid the nondelegable principles normally applicable to trustees.
By L. 1975, c. 26, New Jersey became one of the 25 states to adopt that act. See N.J.S.A. 15:18-15 to 24. The same law repealed an earlier law which limited its application only to educational endowment funds.
*137 In this act, under N.J.S.A. 15:18-15, "Definitions,"
(a) `Institutions' means an incorporated * * * organization organized and operated exclusively for * * * charitable * * * or other eleemosynary purposes * * *.
(b) `Institutional fund' means a fund held by an institution for its exclusive use, benefit or purposes, but does not include (1) a fund held for an institution by a trustee that is not an institution or (2) a fund in which a beneficiary that is not an institution has an interest; other than possible rights that could arise upon a violation or failure of the purposes of the fund; * * *.
It further provides in N.J.S.A. 15:18-19:
Except as otherwise provided by the applicable gift instrument or by applicable law relating to governmental institutions or funds, the governing board may a. delegate to its committees, officers or employees of the institution or the fund, or agents, including investment counsel, the authority to act in place of the board in investment and reinvestment of institutional funds, b. contract with independent investment advisors, investment counsel or managers, banks, or trust companies, so to act, and c. authorize the payment of compensation for investment advisory or management services. [Emphasis supplied]
N.J.S.A. 15:18-20 imposes a standard of ordinary business care and prudence on the members of the governing body of a charitable corporation.
The Foundation is an incorporated organization whose function is to award college scholarships. All the assets and income of the corporation are to be applied for that purpose. Until an award of a scholarship is made, no one person has a beneficial interest. The court concludes that said act is applicable to the Foundation. There is no provision in the will of Frank G. Thompson or the certificate of incorporation of the Foundation inconsistent with it. Indeed, the Foundation's certificate of incorporation expressly authorizes the employment of investment counselors.
The court construes N.J.S.A. 15:18-15 to 24 as the Legislature's expression that in the area of investment management, the responsibilities of members of governing boards of charitable corporations are to be considered more under the developed law of corporations than of trusts. Cf. Stern v. Lucy Webb Hayes National Training School, etc., supra; Bogert, § 396.
*138 The court further concludes that petitioners, as members of the governing board of the Foundation, are not entitled to compensation as trustees, and therefore the reasonableness of the compensation for services to the bank is not to be measured by compensation to trustees of a charitable trust.
The requirements of records and annual reports for federal tax purposes are reviewed in Bogert, § 396 at 283, under the Tax Reform Act of 1976. This is an increased burden and responsibilities for those running charitable corporations with limited resources. That those who give of their time for the public good by serving on boards of charitable corporations need assistance to meet the new requirements and thereby avoid penalties and sanctions under the federal tax law is obvious.
Taking into consideration the express provision in the Foundation's certificate of incorporation, the provisions of N.J.S.A. 15:18-15 to 24, and the need to meet federal requirements, the court concludes they have authority to enter into a contract of the type proposed.
As noted above, the standard for excessiveness should not be the compensation to trustees of a charitable trust. In this case the standards should be the reasonable cost of doing the routine record keeping, purchasing statistical services on investments for background information, paying someone to collect the income, renting a safe deposit box and preparing forms, as well as what charges other institutions make for such services.
In respect to the charges of others, the evidence at the hearing established that the rates are competitive. In respect to the cost of doing this work, there is no specific cost for each item, but considering the cost of paying someone to do the work, have services reviewed, renting a safe deposit box, and other expenses, the court finds that the cost is one that falls within the business judgment of the petitioners.
*139 The court concludes that the petitioners should be advised that the Foundation may enter into the contract if, in their business judgment, it is a reasonable expense for the Foundation. The contract is proposed on an annual basis. Petitioners may review it on that basis annually.
Whether New Jersey should have a policy of requiring charitable corporations such as the Foundation to file annual reports with the State to assist the Attorney General in performing his oversight functions is a matter for the Legislature and the Attorney General to consider.
The application for counsel fees by counsel for the petitioners has not been objected to by the Attorney General and the court finds it reasonable.