**LOUISIANA WORLD EXPOSITION, Plaintiff–Appellant,**

v.

**FEDERAL INSURANCE COMPANY, et al., Defendants–Appellees.**

No. 87–3264.

United States Court of Appeals, Fifth Circuit.

Jan. 24, 1989.

Joseph E. Friend, Friend, Wilson, Spedale & Draper, New Orleans, La., Claude F. Reynaud, Jr., Christine Lipsey, Breazeale, Sachse & Wilson, Baton Rouge, La., for plaintiff-appellant.

Dermot S. McGlinchey, B. Franklin Martin, III, Stephen W. Rider, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for Bagneris, et al.

John T. Nesser, III, Eric H. Weimers, New Orleans, La., Lee Squitieri, New York City, for Terence R.D. Burn, et al.

### ON PETITION FOR REHEARING

Before KING and HIGGINBOTHAM, Circuit Judges.*

---

\* The Honorable William H. Timbers, Circuit Judge of the Second Circuit, sat by designation on the panel that originally decided this case. Judge Timbers is unable to participate in this supplemental opinion because of illness, and this opinion is being rendered by a quorum. 28 U.S.C. § 46(d).

1. *Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233 (5th Cir.1988). Our statement of facts in that opinion is thorough, and we therefore do not repeat it here.

2. *Id.* at 239 n. 6.

KING, Circuit Judge:

The Petition for Rehearing is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Federal Rules of Appellate Procedure and Local Rule 35), the Suggestion for Rehearing En Banc is DENIED.

In their petition for rehearing, the appellees characterize our original opinion[1] as holding that the officers and directors of the Louisiana World Exposition ("LWE"), a nonprofit Louisiana corporation, could be held liable to the corporation for acts of simple negligence in the discharge of their duties as officers and directors. In point of fact, we explicitly refused to decide whether an officer's or director's simple negligence alone would suffice to create a cause of action for the corporation.[2] In view of the ongoing nature of the litigation, however, we sought additional briefing on the subject, and are now prepared to decide, for the purposes of this case,[3] the question.

### I.

The standard of care applicable to the officers and directors of a nonprofit Louisiana corporation is a statutory one, and one in which the words "negligence" and "gross negligence" do not appear. The statute reads in pertinent part:

> Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its members, and shall discharge the duties of their respective positions in good faith, and with that dil-

---

3. As we discussed in our opinion, *Id.* at 244–245, the Louisiana state legislature has passed a statute shielding officers and directors of nonprofit corporations from liability in the absence of allegations of "willful or wanton misconduct." La.Rev.Stat.Ann. § 9:2792.1 (West Supp.1988). That statute is not applicable here for the reasons stated in our original opinion. That statute will, however, be the starting point for the resolution of this issue in future cases.

igence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions.

La.Rev.Stat.Ann. § 12:226(A) (West 1969). We emphasize that we do not seek here to depart from that explicit standard. Our task is simply to interpret the standard as it is written.[4] The necessity for our inquiry into whether simple negligence would suffice to create liability under section 12:226(A) is occasioned by judicial interpretations of the statute and its predecessors. Although the language in the statutory standard makes no reference to concepts of ordinary or gross negligence, the courts have turned to these concepts to guide them in determinations of what the standard means. Our task here, then, is to clarify the meaning of the Louisiana statutory standard of care in terms of gross and ordinary negligence to give greater guidance to the district court on remand.

As we indicated in our original opinion, *LWE*, 858 F.2d at 237, section 12:226(A) is virtually identical to the analogous provision in the Louisiana Business Corporation

Law. La.Rev.Stat.Ann. § 12:91 (West 1969).[5] We are therefore properly guided by interpretations of the latter statute. Similarly, we can look to the judicial interpretations of the predecessor statutes to section 12:91[6] for guidance because the earlier statutes are in pertinent part identical to section 12:91. Further, section 12:91 is also very similar to the analogous provision in the original Model Business Corporation Act (1950).[7] Therefore, we also look to commentary discussing the original Model Act for guidance in our inquiry.

## II. Louisiana Case Law

In our original opinion, we discussed in some detail the Louisiana case law regarding the duty owed by directors and officers to the corporation. *LWE*, 858 F.2d at 237. Our conclusion was that allegations of fraud were not necessary to establish a cause of action against directors or officers by the corporation and that because LWE's complaint could be read to state a cause of action for gross negligence, the complaint could be maintained. We will not reiterate

---

**4.** Our task is further narrowed by the fact that we do not reach here the full range of questions relating to good faith and fiduciary duty that could arise under this statute. Rather, we confine our discussion to the final clause of the statute: "and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions." La.Rev.Stat.Ann § 12:226(A) (West 1969).

**5.** Section 12:91 reads in pertinent part:

Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions.

**6.** La.Rev.Stat. § 12:36 (1950), the predecessor to La.Rev.Stat.Ann. § 12:91 (West 1969) provided:

Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment, and skill which ordinarily prudent men would exercise under similar circumstances in like positions.

The predecessor to § 12:36, Acts 1948, No. 455 § 22 (1948) provided:

Officers and directors shall stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment, and skill which ordinarily prudent men would exercise under similar circumstances in like positions.

The predecessor to No. 455 § 22, Act No. 250 of 1928 § 36 provided:

Officers and directors shall stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment, and skill which ordinarily prudent men would exercise under similar circumstances in like positions.

**7.** In the comments to the predecessor statute to La.Rev.Stat.Ann. § 12:91 (West 1969), La.Rev. Stat. § 12:36 (1950), the source of the statute is indicated to be both Acts 1928, No. 250, § 36 and section 33 of the Model Business Corporation Act. At the time of the adoption of La.Rev. Stat. § 12:36 (1950), section 33 of the Model Business Corporation Act read:

Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith, and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions.

that summary of the case law, but will instead highlight those cases which explain the duty in terms of gross or simple negligence.

In *Pool v. Pool,* 16 So.2d 132 (La.App. 1943) (interpreting Act No. 250 of 1928 § 36), after repeating the statutory standard of care set forth in note 6 *supra,* the court goes on to say:

> Directors are not liable for mere errors of judgment on their part where they act in good faith. They are only required to exercise reasonable care and diligence and act in good faith. But they are liable for wilful neglect of duty, gross negligence or their fraudulent breach of trust.

Thus, rather than simplifying the statutory standard, *Pool* complicates it by adding to the analysis this additional gloss, including the concept of gross negligence. Further, it is unclear from this language whether simple negligence would be sufficient to hold a corporate principal liable. The same problem of vagueness appears in *Stock v. E.A. Fabacher,* 185 So. 48, 49 (La.App. 1938) (interpreting Act No. 250 of 1928 § 36) (corporate officers and directors answerable to company only for acts of gross negligence or maladministration of corporate affairs) and *Allen v. Cochran,* 160 La. 425, 107 So. 292, 293 (1926) (corporation has right of action against corporate agents for gross negligence, maladministration of corporate affairs, and omissions of official duty).

In *Mansfield Hardwood Lumber Co. v. Johnson,* 263 F.2d 748 (5th Cir.) (applying Louisiana law and interpreting La.Rev. Stat. § 12:36 (1950)), *cert. denied,* 361 U.S. 885, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959), we discuss the duty owed by Louisiana corporate officers and directors to the corporation and its shareholders:

> Whether this relationship between officers and directors and their stockholders is termed fiduciary or quasi-fiduciary or trust or confidence is immaterial, and, likewise, it is immaterial whether its breach is described as constructive fraud, unjust enrichment, fraudulent breach of trust, breach of fiduciary obligation, gross negligence, or otherwise, and whether the remedy is given by a constructive trust, restitution, or accounting.... The standard of a fiduciary's duty to his beneficiary, depending on the instant relation and the facts of the particular case, lies somewhere between simple negligence and willful misconduct or fraud with intent to deceive.

*Id.* at 754. This language suggests—albeit ambiguously—that something more than simple negligence will be required to hold a corporate officer or director liable to the corporation.

Recently, the Court of Appeal of Louisiana has again used the opportunity to interpret this standard with the application of concepts of negligence. In *Bordelon v. Cochrane,* 533 So.2d 82 (La.App.1988) (interpreting La.Rev.Stat.Ann. § 12:91 (West 1969)), the plaintiff sought to recover individually as a shareholder, and alternatively to bring a derivative suit against the corporation's officers and directors for breach of their fiduciary duty. After denying the plaintiff relief as an individual shareholder, the court went on to refuse him the right to sue derivatively, saying: "in the absence of usurpation, of fraud, or of gross negligence [courts] will not interfere...." *Id.,* at 87 (quoting *Watkins v. North American Land & Timber Co.,* 107 La. 107, 31 So. 683 (1902)).

These cases suggest, if not compel, an interpretation of the statutory standard which stops short of finding liability when the evidence suggests only simple negligence on the part of a corporate principal. The cases which use negligence and gross negligence as concepts to aid in interpreting the duty owed simply have not gone so far as to find liability where a director or officer has been merely negligent.

This interpretation is also consistent with commentary on the subject of officer and director liability. The Louisiana statute was specifically analyzed in these terms in Veasy and Manning, *Codified Standard— Safe Harbor or Uncharted Reef? An Analysis of the Model Act Standard of Care Compared with Delaware Law,* 35 Bus.Law. 920, 927 (1980) [hereinafter "*Co-*

*dified Standard"*]. The authors discuss *Pool* and characterize it as adding to the confusion surrounding the subject of director liability and concepts of negligence and gross negligence. Arsht and Hinsey, in an article responding to *Codified Standard,* say:

> [T]he discrepancy in standards suggested by the *dicta* of a Louisiana Court in *Pool v. Pool* is more apparent than real. In stating that directors must exercise such "diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions," and then stating that directors are liable for their "gross negligence," the court did not use the term "gross negligence" to lower the articulated standard of care—but rather to refer to conduct that failed to satisfy the articulated standard. This use is confirmed by reference to the first authority cited by the court which states:
>
> > In some jurisdictions the only negligence for which directors are liable is gross negligence, or gross negligence which would warrant an imputation of fraud, but both in these and other jurisdictions, the measure of care required is ordinary and reasonable care, such as a reasonably prudent, careful, and skillful man exercises in the conduct of his own affairs, and they are liable for losses when they fail to exercise such care, and only when they fail to exercise such care. *A failure to conform to this standard is held to constitute gross negligence.* (Citations omitted and emphasis added).

Arsht and Hinsey, *Codified Standard— Same Harbor but Chartered Channel: A Response,* 35 Bus.Law. 947, 949 (1980) (footnotes omitted).

Thus, the Louisiana cases and the commentary thereon indicate that in the case of a for-profit business the statutory standard of care should be interpreted as requiring at least gross negligence. Simple negligence alone is insufficient for a finding of personal liability of an officer or director to the corporation.

## III. Other Jurisdictions: Nonprofit Corporations

As we noted, Louisiana jurisprudence has not interpreted the standard of care of corporate officers and directors as applied to nonprofit corporations. We therefore look to decisions from other jurisdictions for guidance.[8] The standard of care for a director of a nonprofit corporation was long held to be more demanding than that for a director of a for-profit business. The theory was that a nonprofit corporation was analogous to a public trust, and its directors were deemed its trustees. However, modern statutes and case law have altered that, and now the standard for nonprofit corporate directors is usually the same as that of their for-profit counterparts.

The leading case to indicate the change away from the higher standard of care for nonprofit corporate directors is *Stern v. Lucy Webb Hayes Nat. Training Sch. for Deaconesses and Missionaries,* 381 F.Supp. 1003 (D.D.C.1974). In *Stern,* the defendant hospital was sued by a class of patients for its alleged failure to invest its liquid assets in prudent ways, often failing to earn interest on very large sums of money. In finding liability on the parts of the corporation's "trustees" (who acted as corporate directors), the court stated:

> [t]he charitable corporation is a relatively new legal entity which does not fit neatly into the established common law categories of corporation and trust. As the discussion below indicates, however, the modern trend is to apply corporate rather than trust principles in determining the liability of the directors of charitable corporations, because their functions are virtually indistinguishable from those of their "pure" corporate counterparts.

*Id.* at 1013. The court went on to note that a trustee is held to a higher standard of care than a corporate director; the former

---

**8.** We again point out that Louisiana has explicitly adopted a statutory standard for nonprofit corporations identical to that applied to for-profit businesses. See comment to La.Rev.Stat. Ann. § 12:226. We look to these cases, then, only for the sake of completeness.

is liable for simple negligence, while the latter is liable only when he has committed gross negligence. *Id.* Because the corporation's "trustees" acted as directors, the court held them to the lower standard of care applicable to directors. On the facts before it, the court found the corporation's trustees liable for their failure to object when no meeting of the board was held for more than ten years, their failure to acquire adequate knowledge to vote intelligently on corporate funds, and their failure to "exercise even the most cursory supervision of Hospital funds." *Id.* at 1014–16.

In a variety of other cases courts have refused to impose the trustee standard of care on directors of nonprofit organizations, and instead they have used the more lenient standard of a corporate director. *Rywalt v. Writer Corp.*, 34 Colo.App. 334, 526 P.2d 316 (1974), involves a Colorado nonprofit corporation. The court refused to impose a higher standard on the board of a nonprofit homeowners' association than that imposed on principals of for-profit businesses. It denied the plaintiffs the injunctive relief they sought against the board of the association, holding that where the acts of the board are in good faith and within the exercise of honest business judgments, the courts will not interfere. In *Midatlantic Nat. Bank v. Frank G. Thompson Found.*, 170 N.J.Super. 128, 405 A.2d 866 (1979), the members of the governing board of a nonprofit corporation petitioned the court for advice as to whether it could engage in certain transactions. In holding that the transactions in question were permissible, the court stated "the responsibilities of members of governing boards of charitable corporations are to be considered more under the developed law of corporations than of trusts." *Id.* at 871 (citing *Stern* ).[9]

In their supplemental brief, the appellees cite *Newman v. Forwards Lands, Inc.*, 430 F.Supp. 1320 (E.D.Pa.1977), for the proposi-

tion that something greater than gross negligence is necessary to hold the principals of a nonprofit corporation personally liable. In *Newman,* however, the receiver of one nonprofit corporation sued the board of trustees and the executive director of another non-profit corporation. The central issue in the case was whether the receiver of the first corporation had standing to assert the duty owed by the defendants to the second corporation. The court held the receiver did not have standing because it was not asserting the duty on behalf of the second corporation, which was, of course, the corporation to which the duty was owed. The court went on to say that absent intentional misconduct or fraud on the part of corporate officers, a court will decline to pierce the corporate veil to hold corporate principals personally liable to third parties for the corporate principals' breach of duty. In the case before us, the suit against the directors is brought in the name of and on behalf of the corporation. Therefore, questions of piercing the corporate veil do not arise, and *Newman* is inapposite.

### IV.

We emphasize what we indicated at the outset: the standard of care owed by the director or officer of a Louisiana nonprofit corporation is that expressed by the statute. With respect to the specific issue addressed in this opinion, see note 4 *supra,* officers and directors are required to discharge the duties of their respective positions with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions. On remand, in order to recover against any defendant, the plaintiff must establish at least gross negligence on the part of that defendant.

*Postscript Re: Cost–Benefit Analysis*

Although this case was decided on an appeal from the decision of the district

---

**9.** For a more complete discussion of statutory and judicial standards of care imposed on the officers and directors of charitable corporations in various American jurisdictions, see Troyer, Slocombe, Boisture, *Divestment of South Africa Investments: The Legal Implications for Founda-* *tions, Other Charitable Institutions, and Pension Funds,* 74 George.L.J. 127, 131–32 & n. 10 (1985). *See also* Note, *A Call to Reform the Duties of Directors Under State Not–For–Profit Corporation Statutes,* 72 Iowa L.Rev. 725 (1987).

court to dismiss LWE's action against its officers and directors, and not on appeal from the bankruptcy court's decision to authorize the Creditors' Committee to institute this action on behalf of LWE, we make one final point to emphasize our complete agreement with the cost-benefit analysis [10] mandated by the Second Circuit in *In re STN*, 779 F.2d 901, 905 (2d Cir.1985). The bankruptcy court in this case engaged in a careful investigation and consideration of the factors outlined by the Second Circuit in *STN*. That investigation and consideration is critical to the efficient and economical administration of the debtor's estate.

The mandate shall issue forthwith.

---

**10.** The cost-benefit analysis is described by the Second Circuit as follows:

> If the committee presents a colorable claim or claims for relief that on appropriate proof would support a recovery, the district (or bankruptcy) court's threshold inquiry will still not be at an end. In order to decide whether the debtor unjustifiably failed to bring suit so as to give the creditors' committee standing to bring an action, the court must also examine, on affidavit and other submission, by evidentiary hearing or otherwise, whether an action asserting such claim(s) is likely to benefit the reorganization estate. *See Toledo Equipment Co.*, 35 Bankr. [315] at 320 (Bankr.N.D.Ohio 1983).
>
> The court's inquiries will involve in the first instance not only a determination of probabilities of legal success and financial recovery in event of success, but also a determination as to whether it would be preferable to appoint a trustee in lieu of the creditors' committee to bring suit (bearing in mind any fees imposed on the estate by such an appointment, the wishes of the parties, and other relevant factors) and the terms relative to attorneys' fees on which suit might be brought. The creditors who compose the committee may agree themselves to be responsible for all attorneys' fees, but if they would seek to impose such fees on other creditors or the chapter 11 estate, whether by contingent fee arrangement or otherwise, that would obviously affect the cost-benefit analysis the court must make in determining whether to grant leave to sue. Hence fee arrangements should not only be made a matter of record but should be carefully examined by the court as it makes that determination.

*In re STN*, 779 F.2d at 905 (footnote omitted).