REVISED, April 28, 1998

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 97-30411
_____

FEDERAL DEPOSIT INSURANCE
CORPORATION, as receiver and
subrogee of Capital Union Savings
FA and Capital-Union Savings
Association and in its corporate
capacity as manager of the FSLIC
Resolution Fund,

                                        Plaintiff-Appellant,

                    versus

INSA S. ABRAHAM, ET AL.,

                                        Defendants,

INSA S. ABRAHAM, NAYLOR M. CRAGIN,
JAMES S. EMERY, CHARLES C. GARVEY,
WILLIAM L. MILLER, G. ALLEN PENNIMAN,
JR., RAYMONE G. POST, JR., M. J.
RATHBONE, JR., PAUL R. REEVES, ROBERT
M. STUART, O.M. THOMPSON, JR., O.M.
THOMPSON, III, WILLIAM H. WRIGHT, JR.,
DANIEL H. HOFFMAN, JR., HIBERNIA
NATIONAL BANK, in its capacity as
curator of the property and estate
of Henry W. Jolly, Jr.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
_____

March 13, 1998

Before JOLLY, WIENER and STEWART, Circuit Judges.

WIENER, Circuit Judge.

The FDIC, as statutory successor to the RTC, appeals the district court's grant of summary judgment dismissing the suit filed by the RTC in June 1993 against fifteen (15) former officers and directors (collectively, Appellees) of Capital-Union Savings, F.A. The gravamen of the district court's judgment was its determination that the claims asserted against Appellees for breach of their fiduciary duties sounded in unintentional tort, i.e., negligence (or gross negligence), and were thus time barred by Louisiana's one-year prescriptive period; that none of the claims against Appellees — including the claim arising from the repurchase of another thrift's participation in the so-called Esplanade Mall Loan[1] — rose to the level of fraud, self-dealing, bad faith, or any other kind of misdeed that would constitute a breach of Appellees' fiduciary duty of "good faith" under the applicable state statute.[2]

The district court concluded that its decision was mandated by

---

[1] The FDIC's late efforts to create a genuine issue of material fact by recharacterizing Appellees' action in the repurchase of Royal Palm's participation is unavailing; at worst it amounted to gross negligence and at best to a permissible exercise of their collective business judgment.

[2] La. Rev. Stat. Ann. § 6:291 (West 1986) (amended 1992). The 1992 amendments to Title 6 of the Louisiana Revised Statutes made § 6:291 applicable to officers and directors of banks and bank holding companies only, adding a new provision — § 6:786 — to cover officers and directors of other financial institutions, presumably including savings and loan associations and other "thrifts."

our holding in FDIC v. Barton,[3] in the opinion of which we state that "[g]ross negligence is a violation of the duty of care, but unless it is coupled with fraud, a breach of trust or other ill acts, it does not constitute a breach of fiduciary duty."[4]  The Barton opinion goes on to say that "[t]o set out a claim for the breach of fiduciary duty, the FDIC would have to have alleged the failure of good faith and loyalty by the Directors."[5]

The principal thrust of the FDIC's position on appeal is that, irrespective of what we held in Barton, we are now Erie-bound to abandon that case as binding precedent and follow the subsequent, purportedly opposite holding of a Louisiana intermediate court of appeal in Theriot v. Bourg.[6]  In considering the fiduciary duty of corporate directors in Louisiana under the Business Corporation Law,[7] which contained language identical to the wording of the statutes that applied to bank and savings and loan directors at the times relevant to the instant suit, the Theriot court merely approved the trial court's jury charge which described the duty of officers and directors of Louisiana corporations as "two-fold: First, is the duty to act in good faith.  Second, there is the duty

---

[3]  96 F.3d 128 (5th Cir. 1996), reh'g and suggestion for reh'g en banc denied, 104 F.3d 700 (5th Cir. 1997).

[4]  Id. at 133-34.

[5]  Id. at 133 (citing FDIC v. Duffy, 47 F.3d 146, 152 (5th Cir. 1995) (quoting Gerdes v. Estate of Cush, 953 F.2d 201, 205 (5th Cir. 1992)).

[6]  691 So.2d 213 (La. Ct. App.), writ denied, 696 So.2d 1008 (La.), recons. denied, 701 So.2d 146 (La. 1997).

[7]  La. Rev. Stat. Ann. § 12:91 (West 1994).

3

to act with due care. . . . The law does not require that the officers or directors who breach their fiduciary duties as to the corporation profit financially from the corporation's loss before they can be held liable for damages resulting from their breach of duty."[8]  The Theriot court went on to say that it was unpersuaded by our decision in Louisiana World Exposition v. Federal Insurance Company.[9]

The Louisiana Supreme Court denied writs in Theriot; and it is clear that in doing so the court was aware of our Barton opinion, as it was argued in support of the writ application.  What effect, if any, Barton may have had in the decision to deny writs is unknown.  What is known, however, is that Theriot did not involve the issue of time bar.  Neither can the opinion in Theriot be read as a clear and unequivocal holding ⸺ as the FDIC would have us read it ⸺ that (1) the version of the state statute defining the fiduciary duty of officers and directors of banks and savings and loan associations then in effect created a single duty, (2) such duty was personal under the Louisiana scheme rather than general or delictual, or (3) the prescriptive period applicable to any breach of the duty, whether it be the facet implicating loyalty and good faith or the facet comprising the "prudent man" rule, was subject

---

[8]  Theriot, 691 So.2d at 221-22.

[9]  864 F.2d 1147, 1152 (5th Cir. 1989) (holding that simple negligence alone was insufficient to establish personal liability of an officer or director of a nonprofit Louisiana corporation; "[I]n order to recover against any defendant, the plaintiff must establish at least gross negligence on the part of that defendant.").

4

to the prescriptive period of ten years.

Our well-known standard of review of the district court's grant of summary judgment is _de novo_.[10] "To the extent a district court's grant of summary judgment is based on an interpretation of state law, our review of that determination is also _de novo_."[11]

Even though federal subject matter jurisdiction of the case we review on appeal today is not grounded in diversity of citizenship, we nonetheless apply the rules of interpretation that have evolved since _Erie Railroad v. Tompkins_[12] to the controlling state law here under examination. "When adjudicating claims for which state law provides the rules of decision, even when those claims are `federal questions' in form, we are bound to apply the law as interpreted by the state's highest court."[13] And, when a state's highest court has not spoken on an issue, our task is to determine as best we can how that court would rule if the issue were before it. In so doing, we are _bound_ by an intermediate state appellate court decision only when we "remain unconvinced `by other . . . data that the highest court of the state would decide otherwise.'"[14]

---

[10] _FDIC v. Myers_, 955 F.2d 348, 349 (5th Cir. 1992).

[11] _Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc._, 55 F.3d 181, 184 (5th Cir. 1995).

[12] 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

[13] _Ladue v. Chevron, U.S.A., Inc._, 920 F.2d 272, 274 (5th Cir.), _reh'g denied_, 925 F.2d 1461 (1991) (citing _Commissioner of Internal Revenue v. Estate of Bosch_, 387 U.S. 456, 465, 87 S. Ct. 1176, 1783, 18 L.Ed.2d 886 (1967)).

[14] _Id._ (internal citations omitted). _C.f._ _Green v. Walker_, 910 F.2d 291, 294 (5th Cir. 1990) (Louisiana appellate court decision merely a "guide" to federal court in its decision-making

Among the "other . . . data" that might contribute to our remaining unconvinced that the Louisiana Supreme Court would decide contrary to our decision in Barton is the fact that the Louisiana statutes that delineate the fiduciary duties of an officer or director of a bank or other financial institution were amended in 1992 by legislation (which, incidentally, appears to conform to our holding in Barton) clarifying that an action for the breach of an officer's or director's duty of care (including a breach based on gross negligence) has a different prescriptive period than a breach of the duty of good faith (intentional breaches of the duty of loyalty, and acts or omissions of bad faith, fraud, or violations of law). The clarifying legislation specifies that negligence actions against such fiduciaries must be filed within one (1) year following the date of the act, omission, or neglect, or within one (1) year after it was or should have been discovered, but in no case later than three (3) years from the date of the act, omission or neglect. On the other hand, that legislation specifies a two-year prescriptive period and four-year preemptive period for such fiduciaries' intentional and fraudulent breaches of the duty of good faith of such fiduciaries.[15] Such expressions by the Louisiana legislature augur against an eventual Louisiana Supreme Court holding that would make Barton clearly wrong.

---

process) and Wood v. Armco, Inc., 814 F.2d 211, 213 n.5 (5th Cir. 1987) ("The decision of an intermediate appellate state court guides, but is not necessarily controlling upon, the federal court when determining what the applicable state law is.").

[15] See La. Rev. Stat. Ann § 6:293, added by Acts 1992, No.650, and § 6:787, added by Acts 1992, No. 586 (West Supp. 1998).

And, if we are chary to rely on —— much less be bound by —— the holding of one intermediate state appellate court as the harbinger of such a future ruling by the state's highest court, we are doubly so when, as now, the state in question is Louisiana, where the primary sources of law are its constitution, codes, and statutes and the decisions of its courts are secondary sources of law until and unless the numbers and unanimity of such decisions achieve the force of law through the Civil Law doctrine of jurisprudence constante.[16] Likewise, our usual reluctance to use the single holding of but one among a number of intermediate state courts of appeal as the foundation of an "Erie-guess" about how the highest court of the state might rule on a given issue of state law is further heightened in the instant case by the realization that the FDIC's purpose in urging us to do so is to have us disregard our decision in Barton in favor of such a guess.  Thus the appeal we consider today places us squarely at the legal intersection where the foregoing Erie rules for interpreting state law collide with the doctrine of stare decisis.

We are, of course, a strict stare decisis court.  One aspect of that doctrine to which we adhere without exception is the rule that one panel of this court cannot disregard, much less overrule, the decision of a prior panel.[17]  Adherence to this rule is no less

---

[16]  Songbyrd, Inc. v. Bearsville Records, Inc., et al., 104 F.3d 773, 776 (citing Alvin B. Rubin, Hazards of a Civilian Venturer in a Federal Court: Travel and Travail on The Erie Railroad, 48 La.L.Rev. 1369, 1372 (1988)).

[17]  United States v. Taylor, 933 F.2d 307, 313 (5th Cir.), cert. denied, 502 U.S. 883, 112 S. Ct. 235, 116 L.Ed.2d 191

immutable when the matter determined by the prior panel is the interpretation of state law: Such interpretations are no less binding on subsequent panels than are prior interpretations of federal law.[18] Thus, when a panel is considering a governing question of state law on which a prior panel has ruled, the subsequent panel's obligation to follow that ruling is not alleviated by intervening decisions of intermediate state appellate courts unless such "subsequent state court decisions . . . are clearly contrary to a previous decision of this court."[19]

This general rule, as quoted from Pruitt, arises from identical language in Farnham v. Bristow Helicopters, Inc.,[20] which itself relied on the following comment in Broussard v. Southern Pacific Transportation Co.:

> [A] prior panel decision "should be followed by other panels without regard to any alleged existing confusion in state law, absent a subsequent state court decision or statutory amendment which makes this Court's [prior] decision clearly wrong."[21]

Neither Broussard nor Lee clarified precisely what is meant by "a

---

(1991).

[18] Broussard v. Southern Pac. Transp. Co., 665 F.2d 1387, 1389 (5th Cir. 1982) (en banc).

[19] Pruitt v. Levi Strauss & Co., 932 F.2d 458, 465 (5th Cir. 1991)(citing Farnham v. Bristow Helicopters, Inc., 776 F.2d 535, 537 (5th Cir. 1985)); see Lee v. Frozen Food Express, Inc., 592 F.2d 271, 272 (5th Cir. 1979) (our own precedent "should be followed by other panels . . . absent a subsequent state court decision or statutory amendment which makes this Court's decision clearly wrong.").

[20] 776 F.2d 535, 537 (5th Cir. 1985).

[21] Broussard, 665 F.2d at 1389 (quoting Lee, 592 F.2d at 272).

8

subsequent state court decision . . . which makes this Court's [prior] decision clearly wrong," but, at a minimum, a contrary ruling squarely on point is required. We read Broussard and Lee to contemplate a ruling from a state's highest court only, by virtue of the close proximity of the references to such courts and statutory amendments. Admittedly, Farnham relied on two subsequent contrary state appellate court decisions to justify disregarding our prior precedent; yet even in Farnham there were ultimately four intermediate appellate court decisions (two prior and two subsequent) from three of Louisiana's five courts of appeal, and the holdings in all four cases were squarely contrary to our precedent.

We conclude then, that when our Erie analysis of controlling state law is conducted for the purpose of deciding whether to follow or depart from prior precedent of this circuit, and neither a clearly contrary subsequent holding of the highest court of the state nor a subsequent statutory authority, squarely on point, is available for guidance, we should not disregard our own prior precedent on the basis of subsequent intermediate state appellate court precedent unless such precedent comprises unanimous or near-unanimous holdings from several — preferably a majority — of the intermediate appellate courts of the state in question.

But even in the alternative that we would be prone to disregard our own precedent on the basis of nothing more than one contrary opinion of but one of the several intermediate courts of appeal of the state in question, we would not do so in this case.

9

For even a cursory comparison of the issues, discussions, and holdings in Barton and Theriot demonstrates beyond cavil that the pure holding of Theriot is not "clearly contrary" to the holding of Barton. In a nutshell, Theriot recognizes that the state statutory language under examination in both cases requires officers and directors to discharge their fiduciary duties in ways that are free of, inter alia, negligence.[22] Barton, on the other hand, concerned only the question whether the breach of a fiduciary's duty of care under the prudent man standard of the statute is subject to the one-year liberative prescription for delicts or, by virtue of its inclusion in the statutory listing of the standards of care of a fiduciary, is subject to the ten-year prescription that is applicable to a fiduciary's breach of the duty of loyalty or good faith —— the precise issue on which the decision of the district court turned in the instant case. Thus, even if aspects of the reasoning in the state appellate court decision in Theriot are contrary to some aspects of the reasoning in Barton, we cannot say that the holding in Theriot is "clearly" contrary to the holding in Barton.

Inasmuch as we agree with the district court's conclusion that all claims asserted by the FDIC (including the claim emanating from the Esplanade Mall matter) sound in negligence, it follows that the

---

[22] Although not at issue here, both cases implicitly recognize that officers and directors in Louisiana also must discharge their fiduciary duties in good faith, i.e., free of fraud, self-dealing, and other such ill acts; and, again implicitly, that breach of a duty of good faith by officers and directors is subject to the ten year prescription for personal actions.

district court correctly determined that it was constrained by our decision in <u>Barton</u> to hold that those claims are barred by the one-year period of prescription for delictual actions.  And, as we reach the same conclusion in our <u>de</u> <u>novo</u> review regarding the nature of the FDIC's claims, and ⎯ like the district court ⎯ are bound by the holding in <u>Barton</u>, we affirm in all respects the district court's grant of summary judgment dismissing the claims of the FDIC against Appellees.

AFFIRMED.