305 So.2d 147 (1974)
Charles H. ROGERS, Jr., Plaintiff-Appellee,
v.
Stanley A. TIGER et al., Defendants-Appellants.
No. 10076.
Court of Appeal of Louisiana, First Circuit.
December 16, 1974.
Daniel R. Atkinson, Baton Rouge, for appellant.
Wm. H. Brown, Baton Rouge, for appellee.
*148 Before SARTAIN, ELLIS and de la HOUSSAYE, JJ.
SARTAIN, Judge.
Plaintiff-appellee brings this suit seeking damages for personal injury and property damage sustained by him as a result of a collision with defendant's automobile. Defendant has admitted his own negligence in the operation of his vehicle. Thus the sole issue now before this court is the alleged contributory negligence of the plaintiff.
The incident occurred at the intersection of Convention Street and North Fourth on or about September 17, 1972 at approximately 2:15 A.M. in Baton Rouge. Convention is a two lane, one way street west, while North Fourth is a two lane, one way street south. The width of each street is further extended by parking lanes on either side. The police officer who investigated the accident stated that each street was approximately forty-four feet wide, consisting of two twelve-foot traffic lanes and two ten-foot parking lanes on each street. He stated further that the accident occurred in the very center of the intersection.
At the northeast corner of the intersection is a large church which obstructs the view of Convention when proceeding down North Fourth until one is very near the intersection. At the time of the accident, the intersection was controlled by a red and amber flashing semaphore light with Convention receiving the red signal and North Fourth receiving the amber signal.
Defendant was proceeding west on Convention, approaching the red light while traveling in the left traffic lane. Plaintiff was proceeding south on North Fourth in the right lane at a speed of approximately 15-17 m. p. h. As he approached the amber signal he let up on the accelerator slightly, but did not put his foot on the brake. He stated as follows:
"Q Now, when did you lift your foot?
A I'd say about two-thirds of the block.
Q About two-thirds of the block?
A Half way of the block, maybe, somewhere there between Florida and Convention.
Q And what did you slow your speed to at that time?
A It was about sixteen or seventeen miles an hour, and as I said it was around fifteen miles an hour when he hit me.
Q And you had taken your foot off the accelerator about two-thirds of the block?
A I had lifted my foot from it, yes, removed the pressure from the accelerator.
Q Now, when you approached the intersectionhad you ever driven that intersection before? Had you been down that street before?
A Many a time, I've lived in Baton Rouge since '39.
Q You're very familiar with that area, then, aren't you?
A Very much.
Q Are you familiar with the church being over on the left?
A Yes.
Q You were familiar with the fact that it was difficult to see to the left?
A Yes.
Q You were familiar that it was a one-way street proceeding towards the river, were you not?
A Yes. It used to be a two-way street, but they . . .

*149 Q And as you approached the. . .
A . . . changed it to a one-way street.
Q As you approached the intersection tell me how you looked or observed to see if any traffic was coming.
A Well, as I approached Convention I glanced to the right and then as I glanced back like this (demonstrates) is when I saw the car and he hit me.
Q In other words, when you first looked to the left you were not in any position to avoid or stop this accident from happening, is that correct?
A None whatsoever.
Q And when you looked to your left and you saw the Tiger vehicle did it appear to you as though it were going to stop?
A No, sir.
Q In fact it was very evident to you that he was not going to stop?
A He was not going to stop.
Q And you say he was going at a speed that looked like to you to be something like forty-five to fifty miles per hour?
A Yes, sir.
Q Now, Mr. Rogers, you were aware as you approached that intersection that it was a dangerous intersection, were you not?
A The lights indicated it was.
Q And you are very aware of what caution lights mean . . .
A Yes, sir.
Q . . . are you not? As a matter of fact, you have rather strong feelings about blinking lights, don't you?
A I have, yes.
Q That they are very dangerous, caution lights?
A Yes, I have."
The trial judge concluded that the accident was caused solely by the negligence of defendant, and that there was no contributory negligence on the part of plaintiff. In support of this finding he cited in his oral reasons the case of Valenti v. Onellion, 273 So.2d 896 (1 La.App., 1973, writ refused) and stated:
". . . the Court held in that case that a motorist approaching on a through street, although controlled by a flashing yellow light, may proceed into that intersection on the assumption that a person who has the adverse light against him on a nonthroughway street will observe that red light."
For the following reasons we are compelled to reverse.
The applicable law governing intersections controlled by red and amber flashing lights is enunciated in La.R.S. 32:234 which states:
"§ 234. Flashing signals
A. Whenever an illuminated flashing red or yellow signal is used in a traffic sign or signal, it shall require obedience by vehicular traffic as follows:
(1) Flashing Red (Stop Signal) When a red lens is illuminated with rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest crosswalk at an intersection or at a limit line when marked, or, if none, then before entering the intersection, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.
(2) Flashing Yellow Or Amber (Caution Signal)When a yellow lens is illuminated *150 with rapid intermittent flashes, drivers of vehicles may proceed through or past such signal only with caution." (Emphasis ours)
In construing the degree of caution required upon entering an intersection governed by a flashing amber signal, this court stated in Insured Lloyds v. Liberty Mutual Insurance Co., 286 So.2d 420 (1 La.App., 1973):
"The jurisprudence also establishes that a motorist confronted with a flashing yellow signal must exercise caution and vigilance and must ascertain that the crossing can be safely negotiated. The degree of caution required in such instances includes approaching the intersection at a reasonable speed and maintaining a proper lookout for danger. Ardoin v. Crown Zellerbach Corporation, La.App., 232 So.2d 136. What constitutes reasonable speed and proper lookout must, of course, be determined in the light of the circumstances of each individual case." (Emphasis ours)
Examining the circumstances of the case before us, we feel that plaintiff did not keep a proper lookout. The case cited by the trial judge is clearly distinguishable in that that case dealt with an intersection which was not blind. The plaintiff in that case could clearly see the car approaching the red light, and further, the approaching car was slowing down. The driver on the favored street was justified under these circumstances in assuming the car was going to obey the red signal and stop.
In the present case, the intersection was a blind one, a fact of which plaintiff was fully aware. He was also aware that Convention Street was one way west. Yet, he still looked to the right, a direction from which no traffic could legally travel on the one way street, and entered the intersection at such a speed that by the time he did check to the left, it was too late to avoid the collision.
We feel that under the circumstances here presented, plaintiff could have avoided the accident had he looked to the left before looking to the right, as a reasonable man would have done knowing the street was one way. Plaintiff testified he was clearly unable to avoid the accident by the time he looked to the left. The evidence strongly indicates that plaintiff had already begun to traverse defendant's lane of travel before he looked to the left. Since defendant was in the left lane of Convention, plaintiff, if traveling as slow as he claims to have been at the time, would have had the distance of the right lane of Convention and the parking lane, as well as whatever distance exists prior to entering the intersection which yields a clear view of Convention, to stop his own vehicle and avoid the accident. Plaintiff has already testified that defendant's vehicle was traveling from 45 to 52 m. p. h. at the time of the accident. Had plaintiff kept a proper lookout, it would have been obvious that defendant was not going to yield to the red flashing signal.
For the above reasons, we feel the plaintiff breached the duty required of him in La.R.S. 32:234 and such breach was a contributing cause of the injury plaintiff now complains of.
For these reasons the judgment of the trial court is reversed and judgment is hereby entered in favor of defendant with plaintiff to bear all costs of these proceedings.
Reversed and rendered.