J2SHORTESS, Judge.
This case arises out of a tragic car accident at an intersection of two rural highways in Tangipahoa Parish, resulting in the deaths of three teenage boys and the serious injury of others.
September 15,1990, was a clear and sunny day. At approximately 6 p.m., Bradley Jackson and his two friends, Stacey Mitchell and Darren Morgan, set out toward Hammond to attend a friend’s birthday party. Three more friends followed Jackson, who was driving his mother’s pickup truck and leading the entourage through a back-road route to Hammond.
At about the same time, Don Rodrigue left his home with his wife, Melinda Rodrigue, his friend, Steven Krause, and Krause’s date, Melissa Scionneaux. Rodrigue towed an approximately 3,200 pound stock racing car on a homemade trailer behind the pickup truck he was driving. The foursome traveled north on Highway 443 toward Loranger to attend a stock car racing meet.
Jackson was traveling west at about fifty-five to sixty miles per hour down Highway 40 toward the sun. He passed a white Ford Festiva carrying the Clingfrost family, then made an aborted attempt to pass a large, loaded hay truck. On his second attempt to pass the hay truck, Jackson, still traveling fifty-five to sixty miles per hour, encountered the intersection of Highways 40 and 443. Rodrigue was entering the intersection at about thirty to thirty-five miles per hour and was struck broadside by Jackson’s truck. Jackson and Mitchell died at the scene. Morgan, who was seated between Jackson and Mitchell, died about four hours later at a Hammond hospital. All four passengers in Rodrigue’s vehicle were injured, and all except Rodrigue were knocked unconscious upon impact.
The intersection is controlled by a yellow flashing light facing north-south travelers on Highway 443. East-west | gtravelers on Highway 40 face a blinking red light and a stop sign. Jackson, who faced the red blinking light, also was warned of the upcoming intersection by a single yellow no-passing-zone line, which then changes to a double-yellow line on the pavement of the highway, a stop-ahead sign, and a green intersection sign.
Robert Mitchell and Ollie Mitchell, the parents of Stacey Mitchell, sued Rodrigue; his insurer, American National Property and Casualty Company (American National); State Farm Mutual Automobile Insurance Company (State Farm), which was the uninsured motorist earner for the Jackson vehicle; and J.C. Penney Casualty Insurance Company, which provided uninsured motorist coverage for Stacey Mitchell. Joan Taylor, mother of Darren Morgan and administratrix of his estate, sued Rodrigue, American National, State Farm, Melinda Rodrigue, Melissa Scionneaux, Steven Krause, and Colonial Lloyds, which provided uninsured motorist coverage for Morgan. Steven Krause sued Rodrigue and American National. The three cases were consolidated before trial. All of the insurance defendants except State Farm and American National (defendants) deposited their policy limits in the registry of the court and were released, and the individual defendants were released from personal liability prior to trial.[1]
The sole question at trial was whether Rodrigue was negligent in the operation of his vehicle and contributed to the cause of the accident. A jury unanimously found Ro-drigue was not negligent. The trial court *655 denied a motion for judgment notwithstanding the verdict, and entered judgment dismissing the case. The Mitchells and Taylor (plaintiffs) |4separately appealed, and these appeals were consolidated. Krause did not appeal.[2]
On appeal, plaintiffs contend the trial court committed reversible error because photographs of the accident scene and the vehicles were admitted into evidence, but were never allowed to be circulated among the jury. The record reflects the trial court did not allow the photographs to be circulated at the outset of the trial when they first were introduced, but did agree to allow the jury to view them later in the trial. The record does not reflect any later request by plaintiffs to circulate the photos or to send them back with the jury to consider during its deliberations. In light of the entire record, the jury could have reached the same result even if it had viewed the photographs.
Plaintiffs also contend the trial court committed manifest error by failing to give their requested jury charge number three. However, this assignment of error was not briefed. All assignments of error must be briefed or this court may consider them abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4. Because this assignment of error was not briefed, we consider it abandoned.
Plaintiffs argue the jury committed manifest error by concluding Rodrigue was not negligent and in failing to award damages.
The standard of appellate review of the factual findings of a jury is a two-part test: 1) the appellate court must find from the record there is a reasonable factual basis for the finding of the trial court, and 2) the appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous). Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Factual findings should not be reversed on appeal absent manifest error. | ⅞Rosell v. ESCO, 549 So.2d 840 (La.1989). If the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). Consequently, when there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler, 558 So.2d at 1112.
In brief, plaintiffs contend the central issue on appeal is whether Rodrigue was negligent as a matter of law. This question, however, is the question the jury answered. The appellate court’s role is not to redetermine this question. Rather, our role is to determine whether the jury was clearly wrong in its determination, giving deference to the jury’s findings of fact and credibility determinations.
The trial produced the following testimony. Rodrigue testified that he had driven this route numerous times on his way to Loran-ger. He said he approached the intersection driving approximately forty-five miles per hour, which was ten miles per hour below the posted speed limit. He stated he always drove ten miles per hour below the posted speed limit when he was towing a race car. About one-quarter mile before the intersection, Rodrigue said he reduced his speed to thirty to thirty-five miles per hour. Ro-drigue stated he did not turn his head to look to the right or left, but he could see the intersection ahead and did not see any oncoming vehicles. “When you’re looking straight ahead, you can see the area mapped out. I did not see nothing coming,” Ro-drigue said. He further stated he did not apply his brakes at any time, and the first time he saw Jackson’s vehicle was when it hit him directly under the light.
16Krause was riding in Rodrigue’s truck on the far right-hand side next to the door. The two women were seated between him and Rodrigue. At trial, Krause testified he saw “a flash of something” in the corner of his eye approximately 100 feet prior to the intersection. Krause then realized it was a vehicle that was driving fast and was not stop *656 ping. He reacted by shouting “whoa” and putting his arm up to shield the women. He also admitted that in a prior deposition he said Rodrigue’s vehicle was only five feet outside the intersection and impact was almost simultaneous to his view of Jackson’s vehicle. Krause testified the entire sequence of events occurred in a few seconds and stated, “It’s hard to think when you’re talking a matter of seconds.” Concerning Ro-drigue’s ability to stop, Krause stated, “After he heard the whoa and he tried to think, I don’t think he could have done anything.”
The only other witness who saw the vehicles immediately prior to impact was John Sylvest, Jr., one of the teenage boys in the vehicle following Jackson to Hammond. Syl-vest saw the trucks collide and said Ro-drigue’s truck was in the intersection when Jackson hit him. Sylvest’s recollection was that Jackson was still in the left-hand lane upon impact.
Notably, the hay truck driver who more probably than not had a complete view of the entire collision, did not stop. Various other witnesses testified, including Lonnie Adams Jr., another teenager who was in the vehicle following Jackson, and Carla and Alton Clingfrost, who were immediately behind Jackson’s vehicle and whose vehicle Jackson passed before trying to pass the hay truck. These witnesses did not see the impact, but testified as to the driving conditions at the time. Their testimony suggested that the sun blocked Jackson’s view of the red light ahead of him. However, plaintiffs’ expert in accident reconstruction, Raymond Burkhart, admitted there was signage indicating the ^intersection of highways, a “stop ahead” sign, a stop sign, and yellow no-passing-zone stripes on the highway.
The witnesses did not significantly disagree concerning the facts surrounding the impact. Predictably, the experts disagreed whether Rodrigue could have seen Jackson’s vehicle if he was keeping a proper lookout and, if so, whether he had time to avoid the accident.
All three experts agreed that Rodrigue’s visibility was obstructed by vegetation and a fence until approximately 110 feet before the intersection. Plaintiffs’ expert, Oscar Franklin Griffith, a physics professor, testified that at 35 miles per hour, one travels 51 feet per second, giving Rodrigue two seconds to react.
Plaintiffs’ experts stated that, theoretically, a person can be expected to perceive and react to a perceived danger in one second. Defendants’ expert, John Rigol, Jr., testified that Rodrigue could only have seen the very front of Jackson’s vehicle at 110 feet, and at this point he had to perceive the hazard and react. He testified that Jackson would have been approximately 173 feet from the intersection traveling at fifty-five to sixty miles per hour. It was Rigol’s opinion that perception time and reaction time must take one second each in this case and that it was unreasonable to expect Rodrigue to see and slow down sufficiently to avoid the collision because Jackson was driving too fast.
Plaintiffs point to testimony indicating Ro-drigue’s brake system on his trailer was inoperable, that Rodrigue and his passengers were not wearing seat belts, and that Ro-drigue had too many passengers riding in the front of his truck obstructing his view. However, there was no evidence that any of these statutory violations contributed to causing the accident because Rodrigue never attempted to apply his brakes and never looked directly to the right.
IsThe cases involving collisions at intersections controlled by yellow and red flashing lights are legion. Each intersectional accident depends upon and must be decided upon its own facts. Fault is determined by evaluating the conduct of each motorist under all the circumstances of that particular case. Underwood v. Dunbar, 628 So.2d 211, 214 (La.App. 2d Cir.1993), writ denied, 94-0026 (La. 2/25/94), 632 So.2d 767; Insured Lloyds v. Liberty Mut. Ins. Co., 286 So.2d 420 (La.App. 1st Cir.1973).
A motorist facing a flashing yellow light has the right-of-way and the right to assume vehicles on the inferior street will honor that right of way. However, the driver must approach with caution and “if the evidence reflects such a motorist will not stop then the duty rests upon the driver on the favored street to avoid the accident if he *657 can.” Fontenot v. Shelter Mut. Ins. Co., 499 So.2d 997, 1000 (La.App. 3d Cir.1986), quoting Savoy v. Cooley, 144 So.2d 223 (La.App. 1st Cir.1962).
The motorist who approaches an intersection controlled by a flashing yellow light is under a duty, to exercise a greater degree of care and vigilance than one approaching a green light or an uncontrolled crossing. Great American Ins. Co. v. Turnage, 339 So.2d 1322 (La.App. 1st Cir.1976). The degree of caution required includes approaching at a reasonable speed and maintaining proper lookout for danger. What constitutes a reasonable speed and proper lookout depends on the facts. Rogers v. Tiger, 305 So.2d 147 (La.App. 1st Cir.1974).
Our focus then, is whether the jury was reasonable in concluding that Rodrigue approached the intersection at a reasonable speed and kept a proper lookout, and whether he could have avoided the accident. Ro-drigue’s testimony, which was uncontradict-ed, was that he approached at ten miles below the speed limit, then further reduced his speed ten more miles per hour before entering the intersection. Deceleration | pbefore entering an intersection does constitute “caution,” even if a driver erroneously concluded the other driver would stop. McMillan v. State Farm Mut. Auto. Ins. Co., 356 So.2d 1368 (La.1978).
Plaintiffs place great emphasis on the testimony that Rodrigue did not turn his head to look, which they contend constituted negligence. Rodrigue’s testimony, however, was that he gave a general overview because in that way he could view all incoming entryways to the intersection. Rodrigue felt Jackson entered the intersection driving too fast for him to have seen the oncoming truck in time to stop. Plaintiffs’ expert Griffith admitted Rodrigue had to be aware of three separate areas of potential hazardous movement into the intersection.
The experts disagreed over whether Ro-drigue should have seen and reacted in one second or two seconds, and all of the experts agreed that the entire time span in which Rodrigue had to react was, at most, three seconds.
The determination of an expert’s credibility is a factual question subject to the manifest error/clearly wrong standard of review. Martin v. East Jefferson Gen. Hosp., 582 So.2d 1272,1277 (La.1991). After weighing and evaluating all of the evidence, the fact finder is free to accept or reject the opinions expressed by experts. Hoyt v. State Farm Mut. Auto. Ins. Co., 623 So.2d 651, 659 (La.App. 1st Cir.), writ denied, 629 So.2d 1179 (La.1993); Armstrong v. Fireman’s Fund Ins. Co., 558 So.2d 646, 650 (La.App. 1st Cir.), writ denied, 560 So.2d 30 (La.1990).
We cannot say the jury was clearly wrong in choosing to believe defendants’ expert rather than plaintiffs’ experts. The experts’ perceptions of the accident were not very different. The significant disagreement was whether plaintiff should have seen and reacted in one second or two. Clearly, the jury was not unreasonable in deciding Ro-drigue needed two | ipseconds, even three, to see and react to the oncoming vehicle and that, given his position at the time he had an unobstructed view, he could not have stopped even had he turned his head to look.
We cannot say the jury’s finding that Ro-drigue was not negligent was manifestly erroneous. Clearly, the jury chose a permissible and reasonable view that Rodrigue was exercising the proper degree of caution and vigilance required of him as he entered the intersection and that he could not have avoided the accident. If there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880, 883 (La.1993); Patin v. Duplessis Pontiac-Buick-GMC Trucks, Inc., 632 So.2d 790 (La.App. 1st Cir.1993), writ denied, 94-1004 (La. 6/17/94), 638 So.2d 1096. The view the trial court chose was a permissible, reasonable view based on the evidence presented at trial. Engolia v. Attain, 625 So.2d 723 (La.App. 1st Cir.1993).
Finally, plaintiffs also argue the trial court erred in refusing to grant a judgment notwithstanding the verdict. JNOV may be granted only when the evidence, viewed in the light most favorable to the party oppos *658 ing the motion, points so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not arrive at a contrary verdict on the facts at issue. Cupstid v. Harrison Hardwood Mfg. Co., 552 So.2d 1223, 1225 (La.App. 3d Cir.1989), writs denied, 558 So.2d 572 (La.1990); Stafford v. Unsell, 492 So.2d 94, 97 (La.App. 1st Cir. 1986). In light of our discussion and ruling herein, the trial court correctly denied JNOV.
The judgment of the trial court is affirmed, and all costs of this appeal are assessed to plaintiffs.
AFFIRMED.

. State Farm in its capacity as liability insurer for Jackson's vehicle deposited its policy limits in the registry of the court and was released. It remained in the lawsuit in its capacity as uninsured motorist carrier on the Jackson vehicle.

. The judgment, therefore, is final as to Krause.