691 So.2d 213 (1997)
Gertie THERIOT, Nora B. Breaux, and The Harry Bourg Corporation
v.
Carl J. BOURG, Robert J. Martin, Jr., Dorothy B. Bergeron, Mildred B. Voisin, Evelina B. Gallier, and Bourg Mariculture, Inc.
No. 96 CA 0466.
Court of Appeal of Louisiana, First Circuit.
February 14, 1997.
Rehearing Denied April 2, 1997.
*216 Robert B. Butler, III, Houma, and Remy Chaisson, Thibodaux, for Plaintiffs-Appellees.
Claude Reynaud, Jr., Baton Rouge, for Defendants-Appellants Carl J. Bourg, Robert L. Martin, Jr., Dorothy B. Bergeron, Mildred B. Voisin, and Evelina B. Gallier.
Dennis J. Hauge, Houma, for Defendant-Appellee Harry Bourg Corp.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
FOGG, Judge.
This action is a shareholder's derivative suit brought by two minority directors on behalf of the Harry Bourg Corporation ("HBC") against five majority directors to redress severe losses which occurred from 1988 through 1992. After trial by jury, judgment was rendered in favor of the plaintiffs in the sum of $5,798,441.00. The majority directors appeal. We affirm.
HBC is a closely-held corporation which has, as its principal asset, approximately 17,000 acres of marshland in Terrebonne Parish. The corporation was established in 1955 by the late Harry Bourg. The initial distribution of the stock is unclear from the record, but ultimately Harry Bourg's seven children, Albert Bourg, Nora Bourg Breaux, Gertie Bourg Theriot, Evelina Bourg Gallier, Mildred Bourg Voisin, Dorothy Bourg Bergeron, and Lena Bourg Martin, shared equally in ownership of the stock of HBC.
Harry Bourg acted as president of HBC until his death in 1963. Albert Bourg succeeded his father as president of HBC. Albert remained president until his death in 1983 at which time Mildred Voisin took over the post. Each of the seven children or their heirs had a seat on the board of directors. By 1988, Albert Bourg and Lena Martin were deceased. Therefore, Albert's son, Carl, sat on the board in Albert's place and Robert L. Martin, Jr. represented his interest and that of his six siblings on behalf of his mother, Lena.
For most of its existence, the corporation simply collected revenues from mineral leases. However, in anticipation of diminishing oil and gas revenues, HBC, over a long period of time, retained $5 million dollars with which it hoped to diversify.
In May of 1988, the board of HBC voted to create a subsidiary called Bourg Mariculture, *217 Inc. ("BMI") for the purpose of raising redfish. The subsidiary was to be funded by loans made by HBC. Carl Bourg was elected President; Robert Martin was elected Vice President; and Dorothy Bergeron was elected Secretary. Their salaries were set respectively at $5,000 per month, $750 per month, and $750 per month.[1] Additionally, each board member was to receive $250 for each board meeting he or she attended.
At that time, the raising of redfish was a new industry in Louisiana. BMI received, from the Louisiana Department of Wildlife and Fisheries, one of a limited number of permits allowing it to raise redfish on its marshlands. With the help of two of his sons, who were employees of BMI, Carl Bourg had two container barges modified into cages which were designed to hold fish. The concept of raising fish in barges was new; prior to this invention fish had been raised either in ponds or in canals. The testimony reflects that Carl Bourg had his invention patented.
In November of 1988, the initial batch of redfish fingerlings was purchased from the Redfish Hatchery, a company located in Mississippi and owned by Bob Hunt, and placed in the first barge (the second was still under construction). BMI continued to raise these fish until May of 1989, when the fish were released from their cages by some unknown person.
In September of 1989, the plaintiffs herein filed a receivership action and obtained a temporary receivership order, which was ultimately set aside by the Louisiana Supreme Court.
Around mid-1990, BMI placed hybrid striped bass in the fish system. Total sales of the bass amounted to slightly more than $218,913.94, an average of $2.37 per pound, and occurred between June of 1991 and December of 1991. By this time, the total expenditure of HBC money to the project was $3,338,000.00. Subsequently, the remainder of this batch of fish was destroyed by an operational problem concerning the feed.
Meanwhile, Redfish Hatchery became an unreliable source of fingerlings and Carl Bourg entered the fish raising industry independently through his company called 4-C Ranch. The board of HBC agreed that BMI would purchase its next batch of fingerlings from 4-C Ranch and BMI advanced 4-C Ranch $358,000.00 for the fingerlings. In August of 1992, before 4-C Ranch delivered these fingerlings to BMI, Hurricane Andrew destroyed the barges and 4-C Ranch's supply of fingerlings. BMI made no further attempt to raise fish.
This suit was brought by two minority directors of the HBC, Gertie Theriot and Nora B. Breaux (the "minority directors"), derivatively on behalf of HBC against the remaining five directors of the corporation, Evelina B. Gallier, Dorothy B. Bergeron, Robert L. Martin, Jr., Mildred B. Voisin and Carl J. Bourg (the "majority directors"), and HBC's wholly-owned subsidiary, BMI.[2] The minority shareholders complained of the decision by the majority directors to diversify HBC's assets by investigating and then entering the mariculture business through BMI in 1988. At issue were numerous decisions made by the board of HBC and by the operating officers of BMI from 1988 until 1992, when the fish operation was completely destroyed by Hurricane Andrew.
After trial, the jury found that each of the defendants breached his or her fiduciary *218 duty to HBC and that such was the legal cause of damage to HBC in the sum of $5,798,441.00. Fault was apportioned as follows:

Evelina B. Gallier 17.5%
Robert Martin, Jr. 17.5%
Mildred B. Voison 17.5%
Carl J. Bourg 30.0%
Dorothy B. Bergeron 17.5%

The trial court rendered judgment accordingly, holding, in part, that the defendants are jointly, severally, and solidarily liable to HBC for the full sum of $5,798,411.00, together with interest thereon at the legal rate from December 1,1994 until paid. The court further ordered HBC to pay, from any recovery from the defendants in this matter, the sum of $103,266.09 to Gertie B. Theriot and the sum of $102,233.96 to Nora B. Breaux as reimbursement of the expenses and attorney's fees paid by them to previous counsel in the prosecution of this action. The court ordered that the claim of HBC against the defendants for reimbursement of funds of HBC advanced by it to the defendants or otherwise paid by it to or on behalf of the defendants for attorney's fees, expert fees, and other costs and expenses associated with the defense of the defendants is denied on the sole basis of being premature, reserving to plaintiffs their right to re-assert that claim by appropriate rule in the instant proceeding after final disposition of this matter on appeal. The court also ordered that the attorney's fees of Robert B. Butler, III, Remy Chaison and Jerry H. Schwab which it fixed at 28% of any recovery obtained by HBC.
On appeal, the defendants assert the following assignments of error:
1. The district court failed to instruct the jury in a manner that sufficiently caused them to understand that corporations are run by boards of directors elected by a majority of the shareholders, and who conduct business also by a majority vote. The jury did not understand that absent extraordinary circumstances, minority shareholders or directors cannot through hindsight substitute, through the vehicle of a lawsuit, their judgment for that of the majority.
2. The district court failed to properly instruct the jury that directors are not liable for failing to make a corporation profitable or for errors in judgment in running the corporation.
3. The district court failed to sufficiently emphasize to the jury that jurors should not use hindsight, but must consider each decision by the board of directors in the context of the situation known to the board at the time each decision was made.
4. The district court erred in instructing the jury that the standard of care of directors in Louisiana is simple rather than gross negligence.
5. The district court failed to emphasize the overwhelming importance of the Business Judgment Rule and completely negated the impact of the rule by overemphasizing inapplicable and minor exceptions to the rule.
6. The district court erred in not directing a partial verdict in favor of the defendants on all issues related to self-dealing because all instances of self-dealing were permissible within the language of LSA-R.S. 12:84.
7. The jury improperly instructed the jury on self-dealing.
8. The jury erroneously failed to consider the actions of the majority directors on a decision by decision basis.
9. The jury failed to consider the level of sophistication of the majority directors and the reasonableness of their reliance on Charlie Aycock, Minor Pipes, Jr., Dr. Sherwood Gagliano, and other experts.
10. The jury failed to properly apply the Business Judgment Rule.
11. The district court failed to submit interrogatories to the jury that would have allowed it to consider other causes of loss of the mariculture operation, i.e. the release of the first batch in May 1989 and Hurricane Andrew in 1992.
12. The district court erred when it ruled that the majority directors are liable in solido with all the other directors.
13. The district court abused its discretion in failing to direct a verdict for the defendants and in failing to grant Motions *219 for judgment notwithstanding the verdict, remittitur or new trial.
14. The district court erred in holding that corporate stock cannot be pledged to secure a suspensive appeal bond.
15. The district court erred in failing to grant the reconventional demand and motion for sanctions sought by the defendants, based on the false and misleading allegations in the motion for receivership filed by the minority shareholders.
16. The district court erred in granting counsel for the plaintiffs attorney's fees of 28% of all sums collected.
The plaintiffs answered the appeal seeking to have the defendants enjoined from spending any more of HBC's money in their defense and seeking to have the defendants pay back to HBC $806,365.86 already spent on attorney's fees in defense of the defendants.

PARTIAL DIRECTED VERDICT
By assignment of error number six, the appellants assert the district court erred in denying their motion for a directed verdict on all issues related to self-dealing as all instances of self-dealing were permissible pursuant to the language of LSA-R.S. 12:84.
A motion for a directed verdict is appropriately granted when, after considering all of the evidence in the light and with all reasonable inferences most favorable to the movant's opponent, it is clear that the facts and inferences point so overwhelmingly in favor of granting the verdict, that reasonable jurors could not arrive at a contrary verdict. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 (La.App. 1 Cir. 3/11/94); 634 So.2d 466, writ denied, 94-0906 (La. 6/17/94); 638 So.2d 1094; Barnes v. Thames, 578 So.2d 1155 (La.App. 1 Cir.), writs denied, 577 So.2d 1009 (La.1991). However, if there is substantial evidence opposed to the motion, that is, evidence of such a quality and weight that reasonable and fair-minded men exercising impartial judgment might reach different conclusions, the motion should be denied, and the case should be submitted to the jury. Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 478. Evaluations of credibility have no place in a decision on a motion for a directed verdict. Making credibility evaluations is one of the primary duties of the jury and the trial judge may not take this duty from the jury unless the party opposing the motion has failed to produce sufficient evidence upon which reasonable and fair-minded persons could disagree. Jones v. Merritt, 618 So.2d 14 (La.App. 3 Cir.), writ granted on other grounds, 625 So.2d 157 (La.1993).
A trial judge has much discretion in determining whether or not to grant a motion for directed verdict. Barnes v. Thames, 578 So.2d at 1162. The standard of review for the appellate court is whether, viewing the evidence submitted, reasonable people could not reach a contrary verdict. Bergeron v. Blake Drilling & Workover Co., Inc., 599 So.2d 827 (La.App. 1 Cir.), writs denied, 605 So.2d 1117, 1119 (La.1992). Moreover, the propriety of a directed verdict must be evaluated in light of the substantive law underpinning the plaintiff's claims. Adams v. Travelers Ins. Co., 589 So.2d 605 (La.App. 2 Cir. 1991).
In filing the motion for directed verdict, counsel for the appellants moved the trial court "to eliminate all issues relating to self-dealing, including any reference to Bourg Mariculture, Inc. formation being improper or illegal, any reference to the salaries as being improper or illegal, and any reference to the transactions with 4-C Ranch being improper or illegal." The evidence reflects that Carl Bourg was a director of HBC, the president of BMI, a director Redfish Hatchery and sold fingerlings to BMI through 4-C Ranch. Based on this and other evidence in the record, reasonable minds could differ on the issue of self-dealing. Therefore, we find that the trial court did not abuse its broad discretion in denying this motion for a directed verdict.

JURY INSTRUCTIONS
In a jury trial, the judge is not required to give the instructions submitted by either party; however, the trial judge is obligated to give instructions which properly reflect the law applicable in light of the pleadings and facts in each case. Adequate instructions are those instructions which fairly and reasonably point out the issues presented *220 by the pleadings and evidence and which provide correct principles of law for the jury's application thereto. Haydel v. Hercules Transport, Inc., 94-1246 (La.App. 1 Cir. 4/7/95); 654 So.2d 418, writ denied, 95-1172 (La. 6/23/95); 656 So.2d 1019. The adequacy of jury instructions must be determined in light of the jury instructions as a whole. Doyle v. Picadilly Cafeterias, 576 So.2d 1143 (La.App. 3 Cir.1991).
The trial judge is not required to give all the law available on the subject in question. He is only required to instruct the jury as to the law that is pertinent to the case and to do so in terms that the jury can easily comprehend and apply to the evidence before it. Evans v. Tudor Const., 95-1029 (La.App. 3 Cir. 1/31/96); 670 So.2d 447.
Appellate courts exercise great restraint before overturning a jury verdict on the suggestions that the instructions were so erroneous as to be prejudicial. Doyle v. Picadilly Cafeterias, 576 So.2d 1143 (La.App. 3 Cir.1991). The standard of review for the appellate court in determining whether an erroneous jury instruction tainted the verdict involves a comparison of the degree of error with the instructions as a whole and the circumstances of the case. Gunn v. Amica Mut. Ins. Co., 611 So.2d 805 (La.App. 3 Cir.1992), writs denied, 613 So.2d 999 (La. 1993). Therefore, the pertinent inquiry is whether the erroneous jury instruction misled the jury to such an extent that jury was prevented from doing justice. Kessler v. Southmark Corp., 25,941 (La.App. 2 Cir. 9/21/94); 643 So.2d 345.
By assignment of error number one, the appellants assert that the trial judge failed to instruct the jury in a manner that sufficiently caused them to understand that corporations are run by boards of directors who are elected by a majority of the shareholders, and who conduct business also by a majority vote. They contend the jury did not understand that, absent extraordinary circumstances, minority shareholders or directors cannot, through hindsight, substitute their judgment for that of the majority. By their second assignment of error, the appellants assert that the trial court failed to properly instruct the jury that directors are not liable for failing to make a corporation profitable or for errors in judgment in running the corporation. In their third assignment of error, the appellants contend that the trial court failed to sufficiently emphasize to the jury that jurors should not use hindsight, but must consider each decision by the board of directors in the context of the situation known to the board at the time each decision was made.
With respect to these issues, the trial court charged the jury as follows:
A corporation is a legal entity formed under the laws of this state for any lawful purpose. The powers and rights of a corporation are governed by its articles of incorporation, and its by-laws, to the extent they are not inconsistent with Louisiana law. A corporation is owned by shareholders, each of whom is entitled to a certificate of stock evidencing the shareholder's ownership in the corporation. Each shareholder generally has the right to one vote for each share standing in his name on the books of the corporation at annual or special shareholders' meetings. All corporate powers shall be vested in, and the business and the affairs of the corporation shall be managed, by a board of directors elected by the shareholders. A majority of the board of directors shall be necessary to constitute the required quorum, that is, the number of directors present at a directors' meeting to authorize the transaction of business. The acts authorized by a majority of the directors present at a meeting shall be considered an authorized decision of the board of directors. The authorized acts of the board of directors are the acts of the corporation. Simply put, the directors of a corporation are authorized by law to transact all business for the corporation. The board of directors shall elect a president, secretary and treasurer, and may elect one or more vice-presidents. The officers shall perform whatever duties the board of directors has authorized them to do. The officers act only on the authority of the board.
....

*221 ... [Y]ou should not evaluate defendants actions through insights and wisdom that you have gained only through hindsight. Likewise, you can not [sic] judge the wisdom of a business venture solely by its results. The mere fact that a loss was sustained does not prove that the business judgment was improvidently made.
We find that the trial court did not abuse its discretion in using these jury instructions. Therefore, these three assignments of error are meritless.
In assignment of error number four, the appellants assert that the trial court erred in instructing the jury with respect to the standard of care required of corporate directors in Louisiana. Specifically, they contend that the trial court erred in failing to inform the jury that a finding of liability requires a finding of "gross negligence" on behalf of the directors. With respect to the law as it applies to the liability of directors and officers, the trial court initially quoted the language of LSA-R.S. 12:91, which is the statutory law that applies to the liability of directors and officers as set forth at Part IX of the Louisiana Business Corporation Law. The trial court charged the jury as follows:
Louisiana Revised Statute 12:91 provides that officers and directors of a corporation are deemed to stand in a fiduciary relationship to the corporation and its shareholders, and that they shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinary prudent men would exercise under similar circumstances in like positions. A fiduciary is any person who occupies a position of confidence or trust. The duty an officer or director of a corporation owes to the corporation and its shareholders is two-fold: First, is the duty to act in good faith. Second, there is the duty to act with due care.
....
The duty of due care requires that the fiduciary exercise the diligence, care, judgment, and skill which ordinary prudent men would exercise under similar circumstances. The care which we reasonably expect from an ordinary prudent director or officer will vary according to the circumstances facing him. You will also note that the standard of care we expect of, is only of an ordinarily prudent director or officer. We do not expect the director or officer to exercise exceptional diligence, care, judgment or skill.
Directors and officers of a corporation have a continuing duty to keep reasonably informed about the activities of the corporation.
....
... In determining whether a specific act or failure to act amounted to a breach of a defendant's fiduciary duty, you may consider such factors as the duties imposed by the articles of incorporation, or by-laws of the corporation, the nature and size of the corporation, whether the director or officer is paid or unpaid, the education, training, intelligence and experience of the officer or director, the good or bad faith accompanying the conduct, and the actual or imputed knowledge of corporate affairs of the officer or director.
You may find it helpful to phrase your inquiry in this way: How would an ordinarily prudent corporation director or officer have acted, or what steps would he have taken if faced with similar conditions or circumstances?
The law does not require that the officers or directors who breach their fiduciary duties as to the corporation profit financially from the corporation's loss before they can be held liable for damages resulting from their breach of duty.
The appellants assert that a director or officer can only be liable for his actions if they constitute gross negligence and that the definition of that term should be the "the want of even slight care and diligence ... the want of that diligence which even careless men are accustomed to exercise" as set forth in the cases of State v. Vinzant, 200 La. 301, 7 So.2d 917 (La.1942) and Ambrose v. New Orleans Police Ambulance Serv., 627 So.2d 233 (La.App. 4 Cir.1993), reversed on other grounds, 639 So.2d 216 (La.1994).
*222 In support of the proposition that the standard is gross negligence, the appellants refer this court to the case of Pool v. Pool, 16 So.2d 132 (La.App. 1 Cir.1943). In that case a minority shareholders suit was dismissed pursuant to the granting of the defendants' exception of no cause of action. In reversing that judgment this court stated:
Directors are not liable for mere errors of judgment on their part where they act in good faith. They are only required to exercise reasonable care and diligence and act in good faith. But they are liable for wilful neglect of duty, gross negligence or other fraudulent breach of trust. (Citations omitted.)
The appellants assert that this language mandates the use of a gross negligence standard. We disagree. Initially, we note that this language was not necessary to the disposition of the issue before the court in that case and is, therefore, dicta. Furthermore, even if it was more than dicta, the language is misread by the appellants. In Pool we stated that gross negligence would result in liability, rather than liability must be predicated on a finding of gross liability as asserted by the appellants. This conclusion is further supported by the standard applied by this court in this same case upon its return to this court for review of the judgment on the merits. Therein we stated that "directors [are] only required to exercise reasonable care and diligence and act in good faith and with that judgment and discretion which ordinarily prudent men exercise under similar circumstances." Pool v. Pool, 22 So.2d 131 (La.App. 1 Cir.1945).
Furthermore, we have thoroughly searched the jurisprudence for Louisiana cases which require gross negligence under LSA-R.S. 12:91 and found none. The appellants have referred us to no such Louisiana cases. Also, there are no cases which cite the initial Pool decision for the proposition.
The appellants further rely on Louisiana World Exposition v. Federal Insurance Company, 864 F.2d 1147 (5th Cir.1989) which, in applying LSA-R.S. 12:91, relied on Pool v. Pool, 16 So.2d 132 (La.App. 1 Cir. 1943) and used a gross negligence standard. For the reasons stated above, we are not persuaded by this federal jurisprudence and find that the applicable standard is that which is set forth by the plain language of LSA-R.S. 12:91. See LSA-R.S. 1:3. Therefore, the trial court properly charged the jury as to the standard for liability for officers and directors.
By their fifth assignment of error, the appellants assert that the trial court failed to emphasize the overwhelming importance of the Business Judgment Rule and completely negated the impact of the rule by overemphasizing inapplicable and minor exceptions to the rule.
After reviewing the jury instructions as a whole and the law cited by the trial judge on this issue, we conclude that he gave instructions which fairly and reasonably pointed out the issues presented by the pleadings and evidence and which provided correct principles of law for the jury's application thereto. Therefore, we find that this argument is without merit.
Assignment of error number seven asserts that the trial court improperly instructed the jury by using language from the case of Noe v. Roussel, 310 So.2d 806 (La.1975) which dealt solely with self-dealing to describe the fiduciary duty owed by a director. The specific language of which the appellants complain is as follows:
An officer or director must not only affirmatively protect the interest of the corporation. He must also refrain from doing anything that would work injury to the corporation or to deprive it of profit or advantages which his skill and ability might properly bring to it.
We decline to reach this issue, because, accepting arguendo the merit of this assignment of error, in reviewing the jury instructions as a whole, we find no prejudice resulted.

JURY INTERROGATORIES
Our review now turns to the jury interrogatories, which review is governed by the manifest error standard, unless the jury interrogatories were so inadequate or incorrect as to preclude the jury from reaching a *223 verdict based on the law and the facts. If the trial court submits a verdict form to the jury with misleading or confusing interrogatories, just as when it omits to instruct the jury on an applicable essential legal principle, such interrogatories do not adequately set forth the issues to be decided by the jury and may constitute reversible error. Diez v. Schwegmann Giant Supermarkets, Inc., 94-1089 (La.App. 1 Cir. 6/23/95); 657 So.2d 1066; writ denied, 95-1883 (La. 11/17/95); 663 So.2d 720.
Assignment of error number eleven questions the adequacy of the jury interrogatories. Therein, the appellants assert that the trial court failed to submit interrogatories to the jury that would have allowed it to consider other causes of loss of the mariculture operation, such as, the release of the first batch in May 1989 and Hurricane Andrew in 1992.
In the instant case, the trial court submitted a verdict form to the jury with the following interrogatories:
 PART I
1. A. Did Evelina B. Gallier breach her fiduciary
 duty to The Harry Bourg Corporation?
 Yes &check; No ____
 (If your answer is "yes", go on to B. If your
 answer) [sic] is "no", do not answer B. Go to
 question # 2.)
 B. Was her breach of fiduciary duty a legal
 cause of damage to The Harry Bourg Corporation?
 Yes &check; No ____
 (Proceed to question # 2.)
2. A. Did Mildred B. Voisin breach her fiduciary
 duty to The Harry Bourg Corporation?
 Yes &check; No ____
 (If your answer is "yes", go on to B. If your
 answer) [sic] is "no", do not answer B. Go to
 question # 3.)
 B. Was her breach of fiduciary duty a legal
 cause of damage to The Harry Bourg Corporation?
 Yes &check; No ____
 (Proceed to question # 3.)
/s/ Linard J. Lyons 12-20-94
 Foreman Date
3. A. Did Dorothy B. Bergeron breach her fiduciary
 duty to The Harry Bourg Corporation?
 Yes &check; No ____
 (If your answer is "yes", go on to B. If your
 answer) [sic] is "no", do not answer B. Go on
 to question # 4.)
 B. Was her breach of fiduciary duty a legal
 cause of damage to The Harry Bourg Corporation?
 Yes &check; No ____
 (Proceed to question # 4.)
4. A. Did Robert Martin, Jr. breach his fiduciary
 duty to The Harry Bourg Corporation?
 Yes &check; No ____
 (If your answer is "yes", go on to B. If your
 answer) [sic] is "no", do not answer B. Go on
 to question # 5.)
 B. Was his breach of fiduciary duty a legal cause
 of damage to The Harry Bourg Corporation?
 Yes &check; No ____
 (Proceed to question # 5.)
5. A. Did Carl J. Bourg breach his fiduciary duty to
 The Harry Bourg Corporation?
 Yes &check; No ____
 (If your answer is "yes", go on to B. If your
 answer) [sic] is "no", do not answer B. Go on
 to Part II of the Jury Interrogatories.)
 B. Was his breach of fiduciary duty a legal cause
 of damage to The Harry Bourg Corporation?
 Yes &check; No ____
 (Proceed to Part II of the Jury Interrogatories.)
/s/ Linard J. Lyons 12-20-94
 Foreman Date
The verdict form gave the jury the option of deciding either that the defendants caused the losses suffered by HBC or that they did not. The jury answered the verdict form, determining that each of the majority shareholders breached their fiduciary duty owed to HBC and that such breach resulted in damage to the corporation. We disagree with the appellants' contention that the verdict form precluded the determination by the jury that the losses were the result of other causes. Thus, we do not find that the verdict form given by the trial court to the jury contains interrogatories which are so incorrect or inadequate as to have precluded the jury from reaching a verdict based on the law and facts.

JURY VERDICT
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." The Louisiana Supreme *224 Court has set forth a two-part test for the reversal of a fact finder's determinations:
1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
Stobart v. State, Department of Transportation and Development, 617 So.2d 880 (La. 1993), citing Mart v. Hill, 505 So.2d 1120 (La.1987).
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact.... The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).
Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the fact finder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989).
By assignments of error eight, nine and ten, the appellants assert that the jury verdict was manifestly erroneous. Initially, the appellants assert that the jury erroneously failed to consider the actions of the majority directors on a decision by decision basis and failed to properly apply the Business Judgment Rule. We found no evidence of either assertion in the record. Therefore, we find that these assertions lack merit.
The appellants next assert that the jury failed to consider the level of sophistication of the majority directors. Specifically, the appellants contend that, considering the advanced age and limited education of several of the majority directors, the jury erred in finding they breached their fiduciary duty. In making this assertion, they rely on the fact that, at the time of trial, Dorothy Bergeron, Mildred Voison and Evelina Gallier were in their seventies or eighties. Also, none of the majority directors had any formal education in running a business; their business experience was, in large part, limited to HBC. Most had only a high-school education and none had completed college.
We find no support for and reject the contention that advanced age lessens the standard of care required of a director of a corporation. While education and experience are factors to be considered, they, too, do not relieve a director from the duty to act with due diligence. The appellants contend that their reliance on Charlie Aycock, Minor Pipes, Jr., Dr. Sherwood Gagliano, and other experts in deciding to create BMI was reasonable. Of these advisors, geologist Charlie Aycock and attorney Minor Pipes, Jr. advised HBC over many years prior to the creation of BMI and continued to do so throughout its existence. Charlie Aycock advised the board of HBC on matters concerning mineral leases and the like; he had no experience raising fish. Minor Pipes functioned as the attorney for HBC; he, too, had no experience in the fish raising business.
Dr. Sherwood Gagliano, an environmental expert and geologist, conducted a marsh management plan for HBC on behalf of Coastal Environment Corporation. The goal of this study was to research ways to prevent marsh erosion, a problem that could have resulted in the loss of marshlands owned by HBC. His expertise did not extend to the business of raising redfish.
Finally, the appellants assert that Carl Bourg spent considerable time with Bob Hunt of Redfish Hatcheries prior to their decision to go into the redfish raising business. During that time, Carl Bourg viewed the physical plant where Redfish Hatcheries *225 raised its fish and discussed at length Hunt's methods of operation. We note that Bob Hunt's experience was limited to operating a relatively new business that provided only part of the function that BMI ultimately undertook. Furthermore, Redfish Hatcheries was located in Mississippi; whereas, BMI was located in Terrebonne Parish. The testimony reflected that this difference in location would impact the operation of fish raising.
The testimony of the majority directors showed that, when they entered into this project, they had no clear idea of the cost of the project or the point at which they would break even or earn profits. This was reflected in the testimony of several of the defendants wherein they gave substantially differing figures when asked what they anticipated the project would cost. Additionally, they entered this endeavor without a business plan or other vehicle by which they could assess the feasibility of the project. Rather they chose to shift that responsibility to others. Unfortunately, those they placed in the role of determining the feasibility of the initial project and the course the business would take over its brief existence were not equipped to provide sound, thorough advise.
The jury heard the appellants and their advisors testify and concluded that the appellants breached their fiduciary duty. After reviewing the record, we cannot say the jury manifestly erred in concluding that the reliance of ill-prepared advisors constituted a breach of their fiduciary duty. Therefore, we will not reverse its verdict on appeal.

IN SOLIDO LIABILITY
The defendants argue that the trial court's judgment providing for in solido liability is unsupported by the law and the facts. We disagree. The trial court correctly recognized that this breach of fiduciary duty arises out of contract rather than tort. The jurisprudence recognizes that upon a breach of obligations by multiple obligors whose obligations are several, a new obligation can arise for which the obligors are then solidarily liable. See Thibaut v. Thibaut, 607 So.2d 587 (La.App. 1 Cir.1992), writs denied, 612 So.2d 37, 38, 101 (La.1993); Standard Roofing Co. of New Orleans v. Elliot Const. Co., Inc., 535 So.2d 870 (La. App. 1 Cir.1988), writs denied 537 So.2d 1166, 1167 (La.1989); Town of Winnsboro v. Barnard and Burk, Inc., 294 So.2d 867 (La. App. 2 Cir.), writ denied, 295 So.2d 445 (La.1974). We find no error in the trial court's determination that the defendants are solidarily liable for the damages incurred.

MOTIONS FOR JNOV, REMITTITUR AND NEW TRIAL; SUSPENSIVE APPEAL BOND ISSUE
By assignment of error number thirteen, the appellants assert that the trial court abused its discretion in failing to direct a verdict in their favor and in failing to grant motions for judgment notwithstanding the verdict, remittitur or new trial. By assignment of error fourteen, the appellants assert the trial court erred in holding that corporate stock cannot be pledged to secure a suspensive appeal bond. The appellants state in their brief that "[b]ecause of the page limitation in this brief, the majority directors herein incorporate by reference" their arguments addressing these issues which were briefed in writ applications which were previously filed in this court.[3] Such is not sufficient to constitute briefing of an assignment of error under Uniform RulesCourts of Appeal, Rule 2-12.4. Because these assignment of error was not briefed, we consider it abandoned. See Doucet v. Champagne, 94-1631 (La.App. 1 Cir. 4/7/95); 657 So.2d 92, writ denied, 95-1887 (La. 11/3/95); 661 So.2d 1379; Mitchell v. State Farm, 94-0548 (La. App. 1 Cir. 3/3/95); 652 So.2d 652, writs denied, 95-0767, 95-0700 (La. 4/28/95); 653 So.2d 1180.

RECONVENTIONAL DEMAND
The appellants further contend that the trial court erred in denying them costs and attorney's fees pursuant to LSA-C.C.P. art. 863, based on the false and misleading allegations *226 in the motion for receivership filed by the minority shareholders.
LSA-C.C.P. art. 863 provides, in pertinent part, as follows:
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
....
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
Thus, the obligation imposed upon litigants and their counsel who sign a pleading is to make an objectively reasonable inquiry into the facts and the law. Subjective good faith will not satisfy the duty of reasonable inquiry. Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d 506 (La.App. 4 Cir.1991).
Among the factors to be considered in determining whether reasonable factual inquiry has been made are:
1) The time available to the signer for investigation;
2) The extent of the attorney's reliance on his client for the factual support for the document;
3) The feasibility of a prefiling investigation;
4) Whether the signing attorney accepted the case from another member of the bar or forwarding attorney;
5) The complexity of the factual and legal issues; and
6) The extent to which development of the factual circumstances underlying the claim requires discovery.
Penton v. Clarkson, 93-0657 (La.App. 1 Cir. 3/11/94); 633 So.2d 918, citing Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d at 510.
The factual finding of the trial court that LSA-C.C.P. art. 863 was, or was not, violated is reviewed on appeal under the "manifest error" or "clearly wrong" standard. However, once the trial court finds a violation of article 863 and imposes sanctions, the determination of the type and/or the amount of the sanction is reviewed on appeal utilizing the "abuse of discretion" standard. Succession of Thomas, 602 So.2d 1108 (La. App. 1 Cir.1992). In the instant case, the trial court found that LSA-C.C.P. art. 863 had not been violated. Therefore, the "manifest error" or "clearly wrong" standard is the appropriate standard of review.
After thoroughly reviewing the pleadings filed in the instant case and considering the factors set forth above, we are convinced that the trial court was not manifestly erroneous in denying the majority shareholders' request for sanctions. Therefore, the assignment of error is without merit.

ATTORNEY'S FEES
By assignment of error number sixteen, the appellants assert that the trial court erred in setting for the plaintiffs attorney's fees of 28% of all sums collected.
Courts may inquire as to the reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law. Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; *227 (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge. These are derived from Rule 1.5(a) of the Rules of Professional Conduct, which provides:
(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
State, Dept. of Trans. And Dev. v. Williamson, 597 So.2d 439 (La.1992).
Furthermore, a trial judge has much discretion in fixing an attorney fee, and his award will not be modified on appeal absent a showing of an abuse of discretion. Gulf Wide Towing, Inc. v. F.E. Wright (U.K.) Limited, 554 So.2d 1347 (La.App. 1 Cir.1989).
The reasons for judgment reflect that the trial court considered the above facts in setting the amount of attorney's fees. The court took into account the complexity of the case, the work involved in the presentation, the number of hours spent and the degree of skill involved. He was aware of its complexity and experienced, first hand, the work and preparedness of counsel. The reasons are sufficient to sustain this award. Based on the facts of this case, we find no abuse of discretion by the trial court in its award of attorney's fees.

ANSWER TO APPEAL
By their answer to the appeal, the appellees assert the trial court erred in failing to enjoin the defendants from spending additional funds of the corporation of their defense and erred in failing to render judgment ordering the defendants to reimburse HBC the sum of $806,365.86 which has already been spent by the corporation in their defense.
This issue is governed by LSA-R.S. 12:83(D) which provides as follows:
D. Expenses incurred in defending such an action, suit, or proceeding may be paid by the corporation in advance of the final disposition thereof if authorized by the board of directors, without regard to whether participating members thereof are parties to such action, suit, or proceeding, upon receipt of an undertaking by or on behalf of the director, officer, employee, or agent to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the corporation as authorized in this Section.
The appellees assert that, in this context, the term "final disposition" means "final judgment," therefore, upon the rendering of a final judgment by the trial court, the majority shareholders' rights under this legislation ceased. We disagree.
A statute shall be construed to give meaning to the plain language of the statute. State, Dept. of Trans. and Dev. v. Walker, 95-0185 (La. 6/30/95); 658 So.2d 190. The law requires a fair and genuine construction of a legislative act, a reasonable construction *228 in light of the act's purpose. Louisiana Health Service & Indemnity Co. v. Tarver, 93-2449 (La. 4/11/94); 635 So.2d 1090. We find that a case reaches its "final disposition" once all avenues of appeal are exhausted.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed against the appellants.
AFFIRMED.
LOTTINGER, C.J., concurs.
NOTES
[1] Dorothy Bergeron did not accept a salary for acting as secretary of BMI.
[2] Under LSA-R.S. 12:91, officers and directors of a corporation stand in a fiduciary relation to the corporation's shareholders, as well as to the corporation itself. Nevertheless, it is well established that a shareholder of a corporation does not generally have a right to sue personally for alleged losses sustained by the corporation due to mismanagement and/or a breach of fiduciary duties. Hinchman v. Oubre, 445 So.2d 1313 (La.App. 5 Cir.1984); Moity v. Acadian Woodworks, Inc., 435 So.2d 597, 599 (La.App. 3 Cir. 1983). Rather, a shareholder may only sue to recover losses to a corporation resulting from mismanagement and breaches of fiduciary duties secondarily through a shareholder's derivative suit. Article 596 of the Louisiana Code of Civil Procedure requires that the derivative shareholder name both the directors and the corporation as defendants. LSA-C.C.P. art. 596(3). Therefore, the corporation is both a passive plaintiff and a named defendant.
[3] We note that this court granted the appellants an extension in the length of their brief from the twenty-five pages provided by Rule 2-12.2, Uniform Rules, Court of Appeal to fifty pages.