Noor Begum **KARIM**, et al.

v.

**FINCH SHIPPING CO., LTD.,** et al.

**No. Civ.A. 95–4169.**

United States District Court,
E.D. Louisiana.

Nov. 14, 2002.

Jane L. Johnson, Tulane Law Clinic, New Orleans, LA, Paul C. Miniclier, David A. Binegar, law Office of Paul C. Miniclier, New Orleans, LA, Priscilla M. Schwartz, Metairie, LA, for Noor Begum Karim, Fazal Karim.

Randolph J. Waits, James A. Cobb, John F. Emmett, Emmett, Cobb, Waits & Kessenich, New Orleans, LA, for Finch Shipping Co., Ltd.

Andrew Struben deKlerk, Joseph Dwight Leblanc, III, Frilot, Partridge, Kohnke & Clements, LC, New Orleans, LA, for Alpina Ship Management APS.

Thomas H. Kingsmill, III, Fowler, Rodriguez, Kingsmill, Flint, Gray & Chalos, New Orleans, LA, Woody Falgoust, Thibodaux, LA, Alanson Trigg Chenault, O'Neil Group, LLC, New Orleans, LA, for Barwil Agencies (N.A., Ltd.).

Thomas M. Richard, Chopin, Wagar, Cole, Richard, Reboul & Kutcher, LLP, Mandeville, LA, Jamie M. Bankston, Law Office of John W. Norwood, III, Baton Rouge, LA, for BPE, Inc.

## ORDER & REASONS

FALLON, District Judge.

The long legal voyage of Noor Begum Karim precipitated by his travails aboard the M/V LOUSSIO may finally be coming to an end. Following a trial and verdict for the plaintiff the judgement proceeds were deposited in the Registry of the Court. Plaintiff's counsel now moves this Court for an order granting him permission to withdraw funds for payment of his fees, litigation costs and outstanding medical expenses. This decision considers that request and the amount of funds appropriate for distribution to both Karim and his counsel.

## BACKGROUND

This case had its genesis on August 17, 1995, when Noor Bagum Karim (Karim) sustained serious injuries while working as a seaman and/or member of the crew of the M/V LOUSSIO. The injury occurred on the high seas off the coast of Bermuda. The vessel flew a Panamanian Flag and was owned by a Maltese corporation that maintained its base of operation in Pakistan. Karim is a resident and citizen of Bangladesh who contracted with the vessel owner in Bangladesh. Karim is permanently disabled from his injuries and presently resides in Bangladesh. After bifurcated trials on liability and damages, this Court, in its opinion of April 14, 2000, found that the law of Bangladesh was the substantive law applicable to the case. *See Karim v. Finch Shipping Co., Ltd.,* 94 F.Supp.2d 727 (E.D.La.2000), *aff'd,* 265 F.3d 258 (5th Cir.2001). Applying the law of Bangladesh, the Court found the vessel owner liable and awarded Karim the following damages: 654,064 Taka ($13,081.28) for past lost earnings;1,322,585 Taka ($26,451.70) for future lost earnings; 3,183,408 Taka ($63,668.16) for outstanding medical expenses; 1,000,000 Taka ($20,000.00) for future medical expenses; 8,000,000 Taka ($160,000.00) for general damages; and 3,500,000 Taka ($70,000.00) for litigation costs, including attorney's fees. In addition, the judgment provided that Karim was entitled to pre-judgment interest on the past losses at the rate of 5.6% per annum from November 25, 1998, and interest at the same rate on all sums from the date of the judgment until it is paid. The sum totaled $407,055.43. *See Karim,* 94 F.Supp.2d at 746. Pursuant to Court Order, this amount was deposited into the Registry of the Court and placed in an

interest-bearing account. The balance as of June 30, 2002 totals $411,696.61.

Plaintiff's counsel filed an ex parte motion to withdraw the funds from the Registry of the Court. At the Court's direction, plaintiff's counsel submitted an accounting describing the method in which the funds were to be disbursed. The accounting as finally adjusted sets forth the proposed distribution as follows:

| | | |
|---|---|---|
| Advances and Personal Expenses of Mr. Karim [1] | $ 91,230.15 | |
| Medical Expenses [2] | $ 62,638.79 | |
| Litigation Expenses [3] | $100,644.65 | |
| Interest on Bank Loan [4] | $ 44,254.51 | |
| Total Expenses | | $298,768.10 |
| Fees Earned Pursuant to Contract (40% of gross) | | $164,678.64 |
| Balance of Judgment After Fees Earned | | ($ 51.750.13) |
| Amount to be paid to Mr. Karim | | - 0 - |

According to this accounting, after deducting attorney's fees, advances, medical expenses, litigation expenses, and interest expenses, the net pay-out to Karim is zero. The medical providers, the attorneys, the banks, and others, will receive some form of recompense. Karim, who fractured his lumbar vertebra and hip, pelvis, leg, ankle, heel and wrist on the left side, sustained several herniated discs in his back and neck, as well as a detached retina in his right eye, who is permanently disabled from returning to maritime work, and who is likely to require future medical care, will take home nothing. It is true that during the course of the litigation his counsel provided Karim with funds to secure medical care, food and lodging. But the fact remains that according to the proposed distribution, Karim, the litigant who won his case, is the only one who will receive nothing from the proceeds in the Registry of the Court. The issue presented is whether this Court has an obligation or duty to intervene.

The Court appointed the Tulane Law Clinic to represent Karim's interests insofar as the issue of attorney's fees was concerned. The first issue to be resolved was whether the law of Bangladesh or the law of Louisiana applied to the contract of representation entered into between Mr. Karim and his attorney. This Court ruled that the attorney-client contract in this case is governed by the substantive law of Louisiana. *See, e.g., Chittenden v. State Farm Mutual Automobile Ins. Co.,* 788 So.2d 1140, 1147–48 (La.2001) (affirming the power of the Louisiana Supreme Court, through disciplinary rules, to regulate contingency fee contracts in this state); *DOTD v. Williamson,* 597 So.2d 439, 441–41 (La.1992) (noting the court's responsibility to inquire into the reasonableness of attorney fees); Local Rule 83.2.4.E (applying the disciplinary rules of the Louisiana Supreme Court to attorneys appearing before this Court). The standard for evaluating contingent fees under Louisiana law is reasonableness. *See* RULES OF PROFESSIONAL CONDUCT R. 1.5(a), (c) (permitting contingency fee contracts provided that the fee is "reasonable"). Thus the present issue before the Court is whether the attorney's fees and costs requested in this case are reasonable under the circumstances. *See, e.g., Williamson,* 597 So.2d at 441–42 (applying the factors listed in Rule 1.5 to an award of attorneys fees); *Theriot v. Bourg,* 691 So.2d 213, 226–227 (La.App. 1st Cir.1997) (same). To aid in this determination, the Court appointed Mr. James George, a well regarded admiralty attorney, to serve as an expert to assist the Tulane Law Clinic in determining whether the costs and attorney's fees requested in this case are reasonable under Louisiana

---

**1.** See Plaintiff's Exhibit 3(b).

**2.** See Plaintiff's Exhibit 3(c).

**3.** See Plaintiff's Exhibit 3(d).

**4.** See Plaintiff's Exhibits (e) and (f).

law. Plaintiff's counsel retained Richard J. Dodson, another well regarded admiralty attorney, as an expert on the issue of reasonableness of attorney's fees and costs.

After due notice a hearing was convened and testimony was taken and various exhibits were introduced. Having considered the facts and applicable law, the Court makes the following ruling.

## EQUITABLE POWERS OF A COURT IN ADMIRALTY

It is appropriate to first focus on the Court's authority to review a contingent fee agreement between a seaman and his counsel. Federal courts, particularly when sitting in admiralty, have long protected seamen when they enter into contracts with those more skilled than they. As long ago as 1823, Justice Story penned these famous words: "They (referring to seamen) are emphatically wards of the admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner, as courts of equity are accustomed to treat young heirs dealing with their expectancies, wards with their guardians, and *cestuis que trust* with their trustees." *Harden v. Gordon*, 11 F.Cas. 480, 485 (1823). Judge John Brown described the role of a judge sitting in Admiralty in his own unique way: "The Chancellor is no longer fixed to the woolsack. He may stride the quarter-deck of maritime jurisprudence and, in the role of admiralty judge, dispense, as would his landlocked brother, that which equity and good conscience impels." *Compania Anonima Venezolana De Navegacion v. A.J. Perez Export Co.*, 303 F.2d 692, 699 (5th Cir.1962) With these general principles in mind it is appropriate to turn to an analysis of the role of a court with respect to attorney contingent fee contracts.

Among the broad equitable powers of a federal court is its supervisory capacity over an attorney's contingent fee contracts. Federal appellate courts have consistently upheld the right of a district court to modify any contingency fee contract it deems unreasonable under the circumstances. For example, in *Cappel v. Adams*, 434 F.2d 1278, 1279–80 (5th Cir. 1970), the Court held that it was not an abuse of discretion for a district court to restrict the attorney's fee to one-third of the award to a father and to one-fifth of the award to each of three children notwithstanding the fact that the contingent fee contract provided for recovery by the attorney of one-third of the award of all parties. Likewise, in *Hoffert v. General Motors Corp.*, 656 F.2d 161, 165–66 (5th Cir.1981), the Court concluded the district court did not abuse its discretion in reducing a law firm's fee from the agreed upon one-third to one-fifth of the total settlement. This approach also has been consistently followed by Louisiana state courts. *See O'Rourke v. Cairns*, 683 So.2d 697, 705 (La.1996) (modifying a contingency fee contract after application of reasonableness factors); *Gravolet v. Bd. of Comm'rs for Grand Prairie Levee Dist.*, 676 So.2d 199, 205–06 (La.App. 4th Cir.1996) (reviewing the trial court's award of attorney fees for abuse of discretion).

Clearly, under both state and federal law a court has the power as well as the responsibility, particularly where seamen are concerned, to examine and modify contingent fee agreements. Nevertheless, in most cases, such a practice is not necessary or even called for. In exceptional circumstances, however, court intervention is not only necessary but required. For example, where the percentage of the fee is outrageously high or even inappropriately high, courts have quickly stepped in. *See, e.g., Schumacher Law Corp., Ltd. v. Taylor*, 667 So.2d 1121, 1122 (La.App. 4th Cir.1995) (affirming the district court's

modification of a contingency agreement upon finding that the amount sought was excessive in light of the factors); *Horton v. Butler,* 387 So.2d 1315, 1317–18 (La.App. 1st Cir.1980) (modifying a contingency fee contract to reflect reasonable fees for the work actually performed). Likewise, where counsel's efforts have been inadequate or improper, courts have intervened and modified the fee. See, e.g., *Toon v. Wackenhut,* 250 F.3d 950, 954 (5th Cir. 2001).

In the present case, however, neither of these professional maladies is present. The contingent fee in the present case is 40% of the gross recovery. While this is certainly a generous fee interest, it is not totally out of line with community standards for this type of case given the complexity of the legal issues and the cost and difficulty of conducting foreign discovery and procuring the necessary expert witnesses. Furthermore, plaintiff's counsel will not receive 40% of the gross recovery under his proposed distribution because there is simply not enough money left after recoupment or payment of costs. Moreover, in the present case counsel's work product was certainly more than adequate. He spent a great deal of time, energy and resources in the pretrial and trial aspects of this case.

That having been said, however, it is important to recognize that it is the attorney who usually controls the progress of the case. That was certainly true in the present case where the plaintiff was from a foreign country, was uneducated, did not speak or write English, and had no knowledge or experience with the law or our court system. Such decisions as which court to proceed in, state or federal, which doctors to go to, the nature and scope (and consequently cost) of discovery, whether to borrow money for litigation expenses and, if so, from whom and at what interest rates, whether to assert and vigorously pursue a maintenance and cure claim in an effort to shift the medical expense to the vessel owner, and whether to accept or reject various settlement offers made during the course of the proceedings, were all decisions made by counsel. There may be nothing wrong or improper in any of these decisions but in the final analysis they were decisions made by counsel. When things do not turn out well, or as planned, or hoped for, it is simply not appropriate to shift the entire economic fall-out to the injured, permanently disabled seaman. Even the plaintiff attorney's expert, when questioned by the Court, conceded that he would have modified his fee interest to give the plaintiff some funds:

The Court: What would you do in this case?

The witness: What I would have done, this is different from my legal opinion, I would have basically said this: We didn't get enough money, I would feel like I won my place in heaven by helping the seaman; I haven't paid but sixty-five thousand dollars. I feel good for supporting his wife and children, I would say, look here's what the contract says, and I would figure hourly basis and probably what I would have done-and I have done this before, first I would have taken the litigation cost off the top, which I would have paid forty percent of. I would have then taken my forty percent of what's left given him sixty percent and let him pay me back for the personal advances. He would have gotten around twenty, thirty thousand dollars.

I do not believe that I would have been legally required to do that . . . . but that's what I would have done and I have done it on many occasions.

Based on the facts and applicable law, it is the finding of this Court that it is appro-

priate to make some modification of the proposed distribution of the funds.

## CONCLUSION

In view of the foregoing, it is the conclusion of this Court that the contingent fee in the present case should be modified and the distribution of the funds in the Registry of the Court should be as follows:

| | |
|---|---|
| Advances and Personal Expenses of Mr. Karim | $ 91,230.15 |
| Medical Expenses | $ 62,638.79 |
| Litigation Expenses | $100,644.65 |
| Interest on Bank Loan | $ 44,254.51 |

| | |
|---|---|
| Total Expenses | $298,768.10 |
| Funds Remaining After Expenses | $112,928.51 |
| Funds to be distributed to Mr. Karim (50% of $112,928.51) | $ 56,464.25 |
| Funds to be distributed to Mr. Karim's counsel (50% of $112,928.51) | $ 56,464.25 |

As a result of this distribution, counsel will receive or be reimbursed for all of his out of pocket expenses and will share the remaining funds with his client, Karim. In this manner both will share the economic burden of the case.[5] This is reasonable under the circumstances.

---

5. The Court recognizes that the figures cited above as to interest on the bank loan as well as on the funds in the registry of the court are from June of 2002. The Court further understands that interest continues to accrue on these funds since that date to the date of this opinion. Any adjustments to the amounts awarded in this judgment shall be done in conformity with this opinion at such time as this judgment becomes final.